## Patrick Sheedy, administrator, *vs.* Catharine Roach.

Bristol. Oct. 24, 25, 1877. — June 29, 1878. Lord & Soule, JJ., absent.

A deposit in a savings bank may be the subject of a gift *causâ mortis;* and the gift may be proved by the delivery of the bank book representing the deposit, accompanied by an assignment to the donee.

If a person receives a gift *causâ mortis* in trust, neither the persons who are to take nor their proportions being clearly designated, the trust will fail, and the donee cannot take for his own benefit.

CONTRACT for money had and received. Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows:

Winifred Sheedy, the plaintiff's intestate and wife, had $627 deposited in the Fall River Savings Bank, and held on account thereof the usual bank book issued by savings banks to their depositors. During the last illness of the intestate, the defendant, who was her sister, obtained possession of the book with an order for the whole deposit, which, on the day following her death, she drew, claiming it as a gift.

It appeared that whatever passed between the defendant and the intestate, in relation to the order and book and the alleged gift of the property, was in the absence of the plaintiff and without his knowledge; that Mrs. Sheedy could not write, the order being written at the bank by the treasurer and given to the defendant, who carried it to the plaintiff's house; that the order was signed on Sunday, May 6, by a cross; but there was evidence tending to show that the same was so signed by Mrs. Sheedy, with knowledge of its contents, and delivered to the defendant; that the book remained at the plaintiff's house in its usual place in an open trunk standing in the bed-room of Sheedy and his wife until the following Friday night, when the defendant came from Fall River, took the book and carried it home with her on the next day; and that Mrs. Sheedy died on Sunday night, May 13.

"There was evidence tending to show that Mrs. Sheedy intended, in the event of her decease, that the money should be distributed among certain of her relations and other friends, including the defendant.

"Martin Mylon testified to declarations of the intestate, made before the execution of the order, that she wanted to leave some of it, $200, to her parents, some of it to her brother in Ireland, some of it to her poor sister in Fall River, and none of it to Katie, as she had enough of her own; and that the intestate, at the time of signing the order, expressed her wish that the money should go partly to her parents and partly to her sister.

"Mary Maloney testified to declarations of the intestate that she intended that the witness and her mother should each have some of the money. Except as to the parents, there was no evidence as to amounts, in case of a distribution, to be received by the several persons named, nor when it should be paid to them.

" In answer to interrogatories filed by the plaintiff under the Gen. Sts. *c.* 129, § 46, the defendant said the order and book were given to her without instructions what to do with the money, either in the event of the intestate's living or dying. There was also testimony tending to show that the money was given to the defendant for herself."

The plaintiff made, among other requests for instructions, the following: " 6. If it was the intention of Mrs. Sheedy, at the delivery of the order, that, in the event of her death, Catharine Roach should have a part of the money, and a part only, and did not designate what part or portion should be hers, and what portion should be distributed to others, Catharine Roach cannot now lawfully hold the whole fund or any part thereof, and the plaintiff is entitled to recover the whole sum."

The judge refused so to rule, and instructed the jury as follows: " If the jury finds that Winifred Sheedy, in contemplation of death, gave and delivered to the defendant the bank book, intending thereby to give to her then and there the money deposited in her (the intestate's) name in the bank, and the same was so received and accepted by the defendant, then the plaintiff is not entitled to recover, and the jury is to find for the defendant.

" If the jury finds that Winifred Sheedy, in contemplation of death, being sick and apprehensive that she would not recover, gave and delivered to the defendant the bank book, intending thereby to give to the defendant the money deposited in her (the intestate's) name in the bank, in case of her death, and that the defendant received and accepted the same and drew the money either before or after the death of the intestate, then the plaintiff is not entitled to recover, and the jury is to find for the defendant.

" A gift made by a person, in present contemplation of death, of any property the title to which can pass by delivery, is a valid gift ; the essentials of such a gift are, a clear and manifest intention of the owner to give, a subject of gift capable of passing and delivery, and an actual delivery at the time in contemplation of death ; such a gift is not perfected until the death of the giver ; it is revocable by the giver ; if he recovers from the cause of apprehended death, under the influence of which the gift is made, the gift is void.

" But where there is such a gift and actual delivery, and the expected death occurs, the gift is complete, and vests the property in the person to whom the gift is made; and such a gift would be none the less valid, if the gift was made and received in view of the distribution, wholly or in part, after the giver's death, among other persons, whose shares in the same were left to the discretion of the person to whom the gift was made."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. E. Fuller*, for the plaintiff.

*J. M. Morton, Jr.*, for the defendant.

ENDICOTT, J.   We have no doubt that a deposit in a savings bank may be the subject matter of a valid *donatio causâ mortis*, and the gift may be proved by the delivery of the bank book representing the deposit, accompanied by an assignment to the donee.   As a gift *inter vivos*, it vests a complete title in the donee at once; as a gift in contemplation of death, the title is complete on the death of the donor.   As between the parties, the delivery of the book and assignment is all the delivery of which the subject is capable.   Such a delivery may be consistent with other purposes; but if it is clear, upon the evidence, that the donor intended by the act, and in contemplation of death, to make the gift to the donee as a final disposition of the property, it is a good *donatio causâ mortis*.   *Grover* v. *Grover*, 24 Pick. 261.   *Sessions* v. *Moseley*, 4 Cush. 87.   *Bates* v. *Kempton*, 7 Gray, 382.   *Chase* v. *Redding*, 13 Gray, 418.   *Tillinghast* v. *Wheaton*, 8 R. I. 536.   *Coutant* v. *Schuyler*, 1 Paige, 316.

It was decided in *Clough* v. *Clough*, 117 Mass. 83, that the validity of a *donatio causâ mortis* was not affected by the fact that the donee took it for third persons as a trust, the terms and limitations of which were prescribed by the donor, and might vary according to subsequent events.   In that case, the gift was a sum of money delivered to the donee with instructions that he should hold it until his son was twenty-one,.and then pay it over to him with its accumulations; but if the son should die before he was twenty-one, then the money with its accumulations was to be given in equal parts to the mother and sister of the donor. The intention on the part of the donor to create a trust was manifest.   There was no discretion in the donee to carry out

the purpose of the donor, but the duty was imperative upon him, and the persons who were the objects of the donor's bounty were clearly designated, so that the donee could execute the trust, or a court of equity could enforce it according to the intention of the donor. See *Drury* v. *Smith*, 1 P. Wms. 404; *Blount* v. *Burrow*, 4 Bro. Ch. 72; *Hills* v. *Hills*, 8 M. & W. 401; *Sessions* v. *Moseley, ubi supra; Dresser* v. *Dresser*, 46 Maine, 48; *Marshall* v. *Berry*, 13 Allen, 43, 46; 1 Story Eq. Jur. § 607 *e*; 1 Perry on Trusts, § 87. In *Dole* v. *Lincoln*, 31 Maine, 422, as explained in *Dresser* v. *Dresser*, above cited, the gift was held to be invalid, not on the ground that it was in trust, but because the trust was so indefinite and uncertain that it could not be executed.

As a trust may thus be created by a *donatio causâ mortis*, it follows, that, in determining its validity, it must be subjected to the same tests that are applied to other trusts. Among the essentials of a valid trust are, that the precise nature of the trust which the donor intended to create should appear, and that the particular persons who are to take as *cestuis que trust*, and the proportions in which they are to take, should be pointed out. If they are not, then the trust cannot be executed, and it must fail. Where the character of a trust is impressed upon the gift, and it fails, because ineffectually declared, and the *cestuis que trust* are not clearly designated, the trustee is not entitled to the gift for his own benefit. It was said by Lord Eldon, in *Morice* v. *Bishop of Durham*, 10 Ves. 521, 537, that, "though the trust is not declared, or is ineffectually declared, or becomes incapable of taking effect, the party taking shall be a trustee; if not for those who were to take by the will, for those who take under the disposition of the law." *Briggs* v. *Penny*, 3 Macn. & Gord. 546. *Warner* v. *Bates*, 98 Mass. 274. *Hess* v. *Singler*, 114 Mass. 56. 1 Perry on Trusts, § 83, and cases cited. Lewin on Trusts, (5th ed.) 46.

This brief statement, touching a material requisite of a valid trust, has a direct application to the case at bar.

It appears from the bill of exceptions that there was evidence tending to show that Mrs. Sheedy, in contemplation of death, and one week before her death occurred, gave and delivered to the defendant her bank book, with an order for the whole deposit, signed by her with a full knowledge of its contents. The

defendant contended, and offered evidence to prove, that this was an absolute gift to her, without any instructions as to the disposition of the money. The bill of exceptions also states that "there was evidence tending to show that Mrs. Sheedy intended, in the event of her decease, that the money should be distributed among certain of her relations and other friends, including the defendant." This is followed by a short recital of the declarations made by Mrs. Sheedy on that subject, before and at the time she executed the order. Whether this was all the evidence bearing on the question of her purpose or intention in making the gift does not appear. It is imperfectly reported, and is confused and contradictory; and while many different persons appear to have been named or referred to by her, to whom "she wanted to leave some of it," or "expressed her wish that the money should go," or stated that she "intended should have some of the money," she did not declare the amounts which each should receive, except in the case of her parents, to whom "she wanted to leave" $200. It also appears that she stated in substance, in presence of one of the witnesses, that "Katie," whom we presume to be the defendant, should not have any of it, "as she had enough of her own."

It is impossible to ascertain, on this evidence, what particular persons the donor intended should receive the money, or in what proportions. But it was for the jury to decide upon this testimony, taken in connection with all the evidence in the case, whether the gift to the defendant was absolute and for her sole use and benefit, or was intended by the donor to be placed in the defendant's hands for distribution among relatives and friends, whom she failed to designate with sufficient certainty. For, if the character of a trust was impressed upon the gift by the declarations of the donor, then the donee cannot take for her own benefit, although the trust is so imperfectly declared that it cannot be enforced. Whether the trust is perfectly or imperfectly declared, the trustee can take nothing for her own use. See *Briggs* v. *Penny* and *Warner* v. *Bates, ubi supra.*

We are therefore of opinion that the sixth instruction requested by the plaintiff should have been given. The instructions actually given and reported in the bill of exceptions do not cover the precise question raised in this request of the plaintiff,

and the last instruction given to the jury seems to assume that if any distribution of the money was intended among other persons, it was left to the discretion of the defendant. If the distribution was left to the discretion of the defendant, there was no trust and she took absolutely; but, as there was evidence from which the jury could have inferred that the donor did not intend to leave the distribution to the discretion of the defendant, but to provide directly for her relatives and friends, that question should have been submitted to the jury.

*Exceptions sustained.*