WILLIAM L. G. PIERCE, administrator, *vs.* BOSTON FIVE CENTS SAVINGS BANK.

Suffolk.     March 15. — September 16, 1880.

ELIZABETH A. TURNER *vs.* RUFUS ESTABROOK, administrator, & others.

Suffolk.     Nov. 21, 1879. — September 16, 1880.

A deposit in a savings bank may be the subject of a gift *mortis causa;* and the gift may be proved by the delivery of the bank book, although unaccompanied by an assignment.

A donee *mortis causa* of a savings-bank book may maintain an action, in the name of the administrator of the estate of the donor, and without his consent, against the bank to recover the amount deposited.

It is no defence to an action, by a donee of a gift *mortis causa,* to obtain the gift, that the donee is also a creditor of the estate, and that the estate is insufficient to pay his claim, without including the gift in the assets, if he is the only creditor who has not been paid.

If a savings bank agrees to pay a depositor a less rate of interest than six per cent, the plaintiff in an action to recover the deposit is only entitled to the rate agreed upon, to the date of the judgment.

A., in contemplation of death, delivered to B. a sealed package, informing B. that it contained money and savings-bank books, with directions what was to be done with the property. On A.'s death, B. opened the package and found therein a sum of money and certain savings-bank books, with a writing signed by A., stating where he wished to be buried, and that whatever was left, besides paying all bills and expenses, was to be divided among certain persons named. *Held*, that there was a valid gift *mortis causa* to B., in trust.

THE FIRST CASE was an action of contract brought by Martin A. Munroe, in the name of the administrator of the estate of William Green, Jr., to recover deposits in the defendant bank made by Green to the amount of $600. Writ dated June 19, 1877. The bank defended the action at the request of the administrator. Trial in the Superior Court, without a jury, before *Gardner*, J., who allowed a bill of exceptions, in substance as follows:

There was evidence tending to show that the intestate delivered the bank book, issued to him by the defendant, to Munroe, for his own use, as a *donatio mortis causa*, but there was no assignment of the bank book by Green. Upon making the first deposit, Green subscribed to the by-laws of the defendant bank. Printed on the outside of the bank book was the direction, "If you lose this book, give immediate information to the treasurer;" and inside, among the printed by-laws, were the following: "Art. 8. It shall be the duty of the treasurer to enter all deposits and payments made to depositors in the books of the bank, and a duplicate of such entry in the book of the depositor, which shall be his voucher and the evidence of the amount deposited." "Art. 9. No person shall receive any part of his principal or interest without producing the original book."

It appeared that the estate of Green, including said deposits, amounted to $1242.87, and that the debts were $25.40, of which last sum $25 was for the services of the doctor during Green's last illness, and forty cents for some tobacco, both of which items had been paid, and that the funeral and other expenses did not exceed $150, unless the alleged donee, Munroe, was to be considered a creditor. Munroe testified that he had a legal claim against Green's estate of $1300, for board furnished, and some expenses paid for Green; and on January 20, 1879, he commenced a suit against the administrator to recover said amount, which suit is now pending. Pierce was

appointed administrator of Green's estate on January 29, 1877, and the estate was represented insolvent in October, 1879, and commissioners were appointed by the Probate Court.

The defendant requested the judge to rule, as matter of law, as follows: "1. The delivery of the bank book to Munroe by the deceased in his last illness, even if made when he did not expect to recover, and if intended by the deceased as a *donatio mortis causa*, did not pass to Munroe any right to the deposit in the bank. 2. It appearing, from the testimony in the case, that the only property left by the deceased, including the bank deposit, amounted to $1242.87, and that the deceased, at the time of the alleged gift, owed Munroe $1300 in addition to debts to other persons; that the deceased was insolvent at the time of the alleged gift, and of his death, and the gift of the bank deposit, if good in other respects, as *donatio mortis causa* was void, because in fraud of creditors."

The judge declined so to rule, and found for the plaintiff for the amount of the deposits and the interest accumulated thereon, according to the terms of the deposits, down to the date of the writ, with simple interest at six per cent from the date of the writ, against the objection of the defendant, who contended that by the terms of the deposit the interest from the date of the writ should be, if anything, only at the rate of two per cent semiannually, being the rate payable according to the terms of the contract of deposit.

To the above refusals to rule, and to the allowance of interest at six per cent from the date of the writ, the defendant alleged exceptions.

*C. F. Kittredge*, for the defendant.

*F. Ames*, for the plaintiff.


THE SECOND CASE was a bill of interpleader, brought against Rufus Estabrook, administrator of the estate of Martha S. Howe, Samuel T. King, Horace H. King, Francis H. King, Persis E. King, Mary R. Rolfe and Persis F. Chase, to determine to whom the plaintiff should deliver certain moneys and bank books. The case was heard on the pleadings and proofs before *Endicott*, J., who reported it for the determination of the full court, in substance as follows:

At the hearing, it appeared that Howe, the intestate, an unmarried woman, had worked in the millinery business, under the plaintiff's supervision, for two years and a half prior to January 1879, when she ceased labor, on account of ill health; that on March 16, 1879, the plaintiff, at Howe's request, went to her lodging-room to see her, and found that she had an ovarian tumor, and was about to go to the hospital to have an operation performed, and then feared she would never recover, and told the plaintiff that she had some savings-bank books and $250 in money, which she wished the plaintiff to take in her charge. The plaintiff asked, "What do you want done with them, in case anything happens to you?" to which Howe replied, "I will tell you," and proceeded to say that she wished to then give the bank books and money to the plaintiff. The plaintiff refused to receive them in that way, and with Howe's verbal directions merely, and thereupon told Howe that, unless she would carefully seal up with wax the money and bank books, and would also write out her directions as to their disposal, the plaintiff would have nothing to do with them. Howe then replied that she would do as the plaintiff required with the bank books and $250 in money, besides which she stated that she had $50 which she would take to the hospital with her, and that, if she needed any more money, the plaintiff could bring it to her while in the hospital; but if she had no further need, it would be all there, together with the savings-bank books. The plaintiff then said, "Why do you give these things to me, rather than to some relative?" and Howe answered, "Because you are the only person I can trust to do with my things exactly as I have said." No question was made but that the gifts to the plaintiff were made in contemplation of death.

On March 17, 1879, the plaintiff went to the house where Howe lodged, and she then and there gave to the plaintiff a package sealed with wax, saying, "There are all the things we talked about yesterday, sealed exactly as you told me, with the directions what to do with them." The plaintiff took the package, and then rode in a carriage with Howe to the hospital. While in the carriage Howe said to the plaintiff, "Now you will take care of everything for me, won't you?" and

when the plaintiff inquired what she meant by everything, Howe replied, "Why, I mean everything, — all my things, as I have said." At the hospital Howe remained four days, when she died. While at the hospital, the plaintiff visited her every day. At one of these visits, Howe showed the plaintiff the keys to two trunks at her lodging-rooms, and to a trunk in her room at the hospital, and to her watch, and told the plaintiff which key was for each trunk, and which was for the watch.

After Howe's death, the plaintiff took possession of these three trunks, which contained wearing-apparel, and also of a gold watch and $64 in money which Howe had with her at the hospital when she died. The plaintiff then opened the sealed package given to her on March 17, and thereafter kept in her possession, and found therein $250 in money, and four books of deposit in different savings banks in Boston, showing deposits by Howe in these banks to the amount of $2101.16, together with an envelope sealed with wax, and superscribed, "In case of death, the enclosed requests are to be carried out;" which envelope contained a paper on which was written and subscribed in Howe's handwriting, as follows : "If I never recover, I wish to be buried beside my dear father and mother in South Natick, with everything suitable ; and whatever is left, besides paying all bills and expenses, to be divided between Mrs. H. P. Rolfe, of Concord, N. H., Mrs. Dexter Chase, of Lancaster, N. H., and Persis and Horace King, Samuel King, of Boston, also Francis King, also of Boston. M. S. Howe."

Up to this time, the plaintiff did not know the amount of the bank books in the sealed package, or the banks in which they were, but had been told by Howe the amount of the money therein. There was no assignment of the bank books other than as above stated. The bank books and money contained in said package are claimed on the one hand by the administrator, and on the other by the persons named in the writing made by Howe. The title of the administrator to the trunks, with their contents, the watch and $64 in money, was not disputed.

The case was reserved, upon the question whether there was a valid *donatio mortis causa* of the savings-bank deposits, and

of the $250 in money, or of either; such decree to be entered as law and justice might require.

*O. Stevens*, for the administrator.

*Z. S. Arnold*, for the other defendants.

ENDICOTT, J.  It has been repeatedly held that a deposit in a savings bank may be the subject of a valid *donatio causa mortis*, as well as of a gift *inter vivos*, and that such a gift may be proved by the delivery of the bank book to the donee, or to a third person for the donee, accompanied by an assignment. *Kingman* v. *Perkins*, 105 Mass. 111.   *Foss* v. *Lowell Five Cents Savings Bank*, 111 Mass. 285.   *Kimball* v. *Leland*, 110 Mass. 325.   *Sheedy* v. *Roach*, 124 Mass. 472.   *Davis* v. *Ney*, 125 Mass. 590.

As there can be no manual delivery of the credit which the donor has in the bank, the delivery of the book, which represents the deposit, and is the only evidence in the possession of the donor of his contract with the bank, together with an order or assignment, operates as a complete transfer of the existing fund, and is all the delivery of which the subject is capable.

We have not had the question presented to us until now, whether the delivery of the book, without a written assignment or order, is sufficient to constitute a valid gift *causa mortis* or *inter vivos*.   The question has, however, been decided in other jurisdictions in the affirmative.

It was held in *Parish* v. *Stone*, 14 Pick. 198, that the donor's own note, payable to the donee, was not the subject of a *donatio causa mortis*.   But it was intimated in the opinion, that a promissory note of another person payable to bearer, or indorsed in blank, so as to pass by delivery, might be a good gift *causa mortis*, and that a mortgage given to secure it would pass as an inseparable incident to the debt, though not assigned, citing *Duffield* v. *Elwes*, 1 Bligh N. R. 497, and *Duffield* v. *Hicks*, 1 Dow & Cl. 1.   See also *Runyan* v. *Mersereau*, 11 Johns. 534; *Chase* v. *Redding*, 13 Gray, 418; *Ford* v. *Stuart*, 19 Johns. 342.

In *Grover* v. *Grover*, 24 Pick. 261, the action was by an administrator, on a promissory note, which, as appears by the statement of facts, was secured by a mortgage.   The note and

mortgage were given by the plaintiff's intestate to one Blanchard, in contemplation of death; without assignment. It was held that there may be a valid gift *inter vivos* of a promissory note, payable to the order of the donor, without indorsement or other writing by him. And it was said by Mr. Justice Wilde, in delivering the opinion, after reviewing the earlier English cases, " In coming to this conclusion, we concur with the decision in the case of *Wright* v. *Wright*, 1 Cowen, 598, wherein it was held that the gift and delivery over of a promissory note, *mortis causa*, is valid in law, although the legal title did not pass by the assignment." See *Harris* v. *Clark*, 3 Comst. 93. It was also decided that Blanchard, on the death of the donor, could maintain an action against the maker of the note in the name of the administrator; without his assent. It was not necessary to decide whether the gift of the mortgage security was valid, as the right to maintain the action did not depend upon that question, though *Duffield* v. *Elwes* was referred to, as deciding that the gift of the debt operated as an equitable assignment of the mortgage.

In *Sessions* v. *Moseley*, 4 Cush. 87, it was said that " a note of hand of a third person, a security for money, or a chose in action, however it may have formerly been considered, is now held to be the proper subject of such a gift." And in *Bates* v. *Kempton*, 7 Gray, 382, it was decided, on the authority of these cases, that, by the law of Massachusetts, a negotiable note is the proper subject of such a gift without indorsement, and that the donee may maintain an action on it in the name of the administrator of the donor without his consent. See also *Borneman* v. *Sidlinger*, 15 Maine, 429. So the delivery of bonds, or a policy of life insurance with the deposit note, have been held to constitute good gifts *mortis causa* without assignment of the instruments. *Snelgrave* v. *Baily*, 3 Atk. 214, per Lord Hardwicke. *Witt* v. *Amis*, 1 B. & S. 109. *Wells* v. *Tucker*, 3 Binn. 366. *Waring* v. *Edmonds*, 11 Md. 424.

The decision of Lord Hardwicke in *Ward* v. *Turner*, 2 Ves. Sen. 431, in which he held that the mere delivery of receipts for South Sea annuities was not sufficient to constitute a good gift *causa mortis*, distinguishing it from the case of *Snelgrave* v *Baily*, was said by Mr. Justice Wilde, in *Grover* v. *Grover*, t·

be technical and unsatisfactory, and to have no application to our laws, which place bonds and other securities on the same footing. In *Westerlo* v. *De Witt*, 36 N. Y. 340, the delivery of a certificate of deposit on the New York Life Insurance and Trust Company was held to be effectual, without a written assignment, to transfer the deposit itself to the donee as a *donatio causa mortis*. So a delivery to a donee of a savings-bank book containing entries of deposits to the credit of the donor, with the intent to give the donee the deposits represented by the book, has been held to constitute a complete gift of such deposits, and that such delivery vests the equitable title in the donee without assignment. *Hill* v. *Stevenson*, 63 Maine, 364. *Tillinghast* v. *Wheaton*, 8 R. I. 536. *Camp's appeal*, 36 Conn. 88. *Penfield* v. *Thayer*, 2 E. D. Smith, 305.

A savings-bank book has a peculiar character. It is not a mere pass-book, or the statement of an account; it is issued to the person in whose name the deposit is made, and with whom the bank has made its contract; it is his voucher, and the only security he has, as evidence of his debt. The bank is not obliged to pay to the depositor the money in its hands except upon presentation of the book; and if in good faith and without notice it pays the money deposited to the person who presents the book, although the book has been obtained fraudulently by him, the bank is not liable to the real depositor. *Sweeney* v. *Boston Five Cents Savings Bank*, 116 Mass. 384. *Wall* v. *Provident Inst. for Savings*, 3 Allen, 96. *Levy* v. *Franklin Savings Bank*, 117 Mass. 448. *Goldrick* v. *Bristol County Savings Bank*, 123 Mass. 320.

The book is the instrument by which alone the money can be obtained, and its possession is thus some evidence of title in the person presenting it at the bank. It is in the nature of a security for the payment of money; it discloses the existence and amount of the fund to the person receiving it, and affords him the means of obtaining possession of the same. We can have no doubt that a purchaser, to whom such a book is delivered without assignment, obtains an equitable title to the fund it represents; and a title by gift, when the claims of creditors do not affect its validity, stands on the same footing as a title by sale. *Grover* v. *Grover*, 24 Pick. 261.

In the first of the cases now before us, the delivery of the bank book to Munroe, by Green, in his last sickness, without a written assignment, made in contemplation of death, and with the intent thereby to transfer the deposit in the bank to Munroe, constituted a valid *donatio mortis causa*, and Munroe may maintain an action against the bank for the amount of the deposit, in the name of Green's administrator, without his consent.

The judge properly refused to rule, upon the facts presented, that the gift to Munroe made the estate insolvent, and was therefore void because in fraud of creditors.

It is true that a gift *mortis causa* cannot avail against creditors. In such case the donee is in the same position as legatees and heirs, for strictly speaking the only property which a person by gift *causa mortis* or by will can voluntarily dispose of, without consideration, is the balance left after the payment of his debts. Munroe therefore, as donee *causa mortis*, took his title to the bank deposit subject to the right of the administrator to reclaim it, if required for the payment of debts. *Mitchell* v. *Pease*, 7 Cush. 350. *Chase* v. *Redding*, 13 Gray, 418. But, upon the facts in this case, Munroe is the only person against whom, as creditor, the gift would be void, and it cannot be said to be a fraud as against him.

It appears that Pierce was appointed administrator in January 1877, and that the estate of Green, not including the deposits in the bank, amounted to $642.87. This action was brought in June 1877. In January 1879, Munroe brought an action against the administrator, alleging that Green's estate was indebted to him in the sum of $1300, for board of Green and other expenses paid for him. Pierce thereupon represented the estate as insolvent in October 1879, and commissioners were appointed, but no further action seems to have been taken. The only debts besides the claim of Munroe amounted to $25 for the doctor's bill during Green's last sickness, and forty cents for some tobacco, which have both been paid. The funeral and other expenses did not exceed $150, but these are not debts within the meaning of the statute in regard to the settlement of the estates of deceased persons. The expenses of the funeral, and of the last sickness, and the expenses attending the administration, we must presume to have been paid before the estate was declared insolvent. The

doctor's bill would come within this category. Gen. Sts. *c.* 99, § 1. Munroe therefore was the only creditor. If he should establish his claim against the estate for $1300, he would be entitled only to what remains of the $642.87 after the above payments, and could make no claim against the administrator for funds in his own hands, by virtue of the gift from Green. It would be an idle ceremony to have the bank deposit paid over to Pierce, the administrator, in order that he should deduct from it the claim of Munroe, pay him, and also return to him the balance.

As we understand the bill of exceptions, by the terms of the contract upon which the deposit was held by the defendant, the rate of interest thereon is four per cent *per annum*, payable semiannually. This action is brought upon that contract, and the damages for the nonpayment of the money are to be estimated at that rate, till the debt is merged in the judgment. *Brannon* v. *Hursell*, 112 Mass. 63. *Union Institution for Savings* v. *Boston, ante*, 82. *Miller* v. *Burroughs*, 4 Johns. Ch. 436. *Van Beuren* v. *Van Gaasbeck*, 4 Cowen, 496. The ruling of the presiding judge, that the plaintiff was entitled to six per cent from the date of the writ, was erroneous. If the plaintiff will remit the two per cent erroneously included in the verdict, the exceptions may be                          *Overruled.*

In the second case, the delivery to the plaintiff by Miss Howe of the sealed package containing $250 in money and four bank books, accompanied by directions as to the disposition of the same in case of her death, thus manifesting her intention of making a final disposition of the property contained in the package, was a valid *donatio mortis causa ;* and the plaintiff held the same in trust after the death of the donor, upon the terms and limitations prescribed by the donor. *Clough* v. *Clough*, 117 Mass. 83. *Sheedy* v. *Roach*, 124 Mass. 472. In the opinion of a majority of the court, the donor had the right thus to dispose of this particular property. The plaintiff knew that the package contained money and bank books; and it is immaterial that she did not know the amounts due upon the books, or the names of the banks which held the several deposits. She is bound to dispose of the money, and the deposits in the banks represented by the books, as directed by the donor, subject to any claim the

administrator may have for the payment of debts and neces-
sary expenses of administration. *Mitchell* v. *Pease*, 7 Cush. 350.
*Chase* v. *Redding*, 13 Gray, 418. *Davis* v. *Ney*, 125 Mass. 590.

The terms of the decree must be settled before a single judge.

*Decree accordingly.*