Williams, J.
The facts which the evidence fairly tends to prove, and which, therefore, in view of the verdict and judgment must be regarded as having been established to the satisfaction of the jury and the courts whose duty it was to pass upon its weight, are substantially as follows : Morgan Polley died intestate in the city of Cleveland, December 2, 1892, and the defendants below were appointed administrators of his estate. A few days before his death, Morgan Polley, having then in his possession a bank book issued to him by a Cleveland Savings Bank showing deposits by him to the amount of eighteen hundred dollars and over, delivered the book to the plaintiff, accompanying the delivery with the declaration that he gave her the book and the money it represented, as her property. This was done with the intention to thereby make an absolute gift of the book and money to the plaintiff. At that time Morgan Polley was ill of the malady of which he afterward died, was conscious of his approaching death, and of sound mind. His apparent motive in making the gift was, that an engagement of marriage existed between him and the plaintiff, and she was constant in her care of him during his illness. She accepted the gift when it was made, received the bank book into her possession, and retained its actual custody until some time after the death of Morgan Polley, when, without her consent, the defendants obtained possession of it, and George Polley, on its presentation to the bank, received *220 the whole amount appearing to be due upon it, and claims the right to hold and administer the money as assets of Morgan Polley’s estate. The deposit book, under the regulations of the bank, was of such character that the amount on deposit, or any part of it, could be drawn upon the presentation of the book at the bank by the holder, without check or order from the depositor, and it could not be drawn without the production of the book; and any payment made upon a book of that kind was entered on it by the bank when made, so that it always showed the actual amount which the bank owed upon it.
If there was a sufficient delivery to effectuate the intended gift, there was present every element of a valid donatio causa mortis, as well as of a gift inter vivos. In support of their contention that the delivery was insufficient, counsel for the plaintiffs in error cite the cases of Hamor v. Moore's Admr., 8 Ohio St,, 239; Starr v. Starr, 9 Ohio St., 75; Simmons v. Savings Society, 31 Ohio St., 457; Gano v. Fisk, 43 Ohio St.. 462; and Flanders v. Blandy, 45 Ohio St., 108. But the question we have here is different from that involved in any of those cases. In the last two of them there was no actual delivery to the donee of the subject of the alleged gift — in one case government bonds, and in the other choses in action due the donor. In Simmons v. Savings Society, the gift was of the drawer’s check payable to the donee, which was never accepted by the drawee, and was revoked before its presentation. It was subject to revocation, and there was no liability of the drawee upon it. In the first two of the cases referred to, the things delivered were the donor’s own promissory notes payable to the donees. They were sought to be made available *221 as a gift of the money which the donors promised to pay; but, the promises being without consideration, they amounted to no more than mere promises to give the money, .and could not be enforced. In the case before us, the deposit book which Morgan Polley gave to the plaintiff was issued to him by the Savings Bank as evidence of its indebtedness to him, and was the only evidence thereof furnished in such cases. And, as no part of the deposit could be withdrawn without presentation of the book, upon which, at the time, the entries of the withdrawals are made by the bank, this book, at the time of its delivery to the plaintiff showed the exact amount which the bank then owed upon it, and was complete evidence of the bank’s obligation to pay that amount to the depositor, or whoever should become its lawful owner, when duly presented at the bank. The question then which this case presents is, whether there can be a valid gift inter vivos, or causa mortis, of a chose in action by its delivery to the donee without assignment in writing by the donor. We .are not aware of any reported decision of this court in which the question has been considered. Elsewhere such gifts are sustained by the great weight of authority, and almost with unanimity. In Thornton on Gifts and Advancements, section 273, that author says, “it may be stated that any written obligation is the subject of gift, without indorsement or assignment.” Not only notes, bonds, mortgages, etc., but “all evidences of indebtedness which may be regarded as representing the debt, whether with or without indorsement, are the subject of a donatio mortis causa, and of course of inter vivos.” And that doctrine is maintained, as the author shows, in a large number of the American States, *222 and by the English courts. In 2 Redfield on Wills, (Ed. 1866) 312, 313, it is laid down as the established rule, that “notes and bills not negotiated so as to pass by delivery, and also promissory notes not negotiable, bonds, mortgages, policies of insurance, and all other evidences of indebtedness which may be regarded as representing the debt, may by a parol gift, and delivery of the paper by which the debt is evidenced, either with, or without written assignment or indorsement, constitute a good gift mortis causa."
There seems never to have been serious doubt of the validity of parol gifts of specialties negotiable by delivery ; nor much controversy that a valid gift could be made by the delivery of instruments payable to bearer ; but it was held in some early English cases that, as delivery without indorsement of notes payable to order, and of nonnegotiable obligations, passed only the equitable title, a valid gift could not be made by such delivery. This holding rested upon the theory that it was necessai’y to resort to equity to compel the donor, or his representative, to transfer the legal title, and that equity would not lend assistance to compel the completion of a mere voluntary gift. This reason ceased to be of force when the donee became entitled to use the name of the donor, or his personal representative, in a suit to enforce collection of the instrument ; and, since all suits at law, as well as in equity, may be brought in the name of the real party in interest, the rule may be regarded as obsolete. As said in Thornton on Gifts, section 270, ‘ ‘The old rule that impeded the holding of such gifts as valid because the donee could not maintain an action thereon, is swept away by the more enlightened rule which compels the personal representa *223 tive of the donor upon being indemnified for whatever costs he may be compelled to pay, to permit the action to be brought in his name; or by the equitable rule enforced by statutes or codes that the real party in interest may bring an action upon a note he holds, whether it was indorsed to him or not.”
The right to give is as clearly incident to the right of property, as the right to sell; and ehoses in action are as much within the scope of this principle as lands and chattels ; and hence, a delivery by way of gift, of an instrument evidencing a debt, without written indorsement by the donor, as effectually transfers the beneficial interest in the property to the donee, as would such delivery by way of assignment for value. It was said by the Master of the Rolls, in Veal v. Veal, 27 Bevan, 303, that it was a “much more healthy state of the law that the validity of such a gift should not depend on whether the donor had written his name on the back of the bills or not, if it be clear that he intended to give them.” The indorsement of the donor’s name on the instrument is merely evidence of his intention to make a gift, which may be proven aside from such indorsement. In Grover v. Grover, 24 Pick., 261-263, the Supreme Court of Massachusetts in answering an objection that no valid gift of a chose in action could be made without written assignment said, that, “as a good and effectual equitable assignment of a chose in action may be made by parol, and' as courts of law take notice of and give effect to such assignments, there seems to be no good foundation for the objection. It is true that the cases, which are numerous, in which such equitable assignments have been supported, *224 are founded on assignments for a valuable consideration; but there is little, if any, distinction in this respect, between contracts and gifts inter vivos, the latter indeed, when made perfect by delivery of the thing’s given, are executed contracts. 2 Kent’s Com., (3d Ed.) 438. By delivery and acceptance the title passes, the gift becomes perfect and is irrevocable. There is, therefore, no good reason why property thus acquired should not be protected as fully and effectually as property acquired by purchase. And so we think a gift of a chose in action, provided no claims of creditors interfere to affect its validity, ought to stand on the same footing as sales.” And this is the rule which prevails in the Federal courts, and in all of the states in which the question has arisen; and it has been before the court of last resort in many of them. Thornton on Gifts, section 271.
In recent well considered cases the rule has been applied to sustain gifts made by the delivery, without written transfer, of books of deposit issued by savings banks, in cases not distinguish-. able in any important feature from that now under consideration. In Camp’s Appeal, 36Conn., 88, it is held that; “a delivery to a donee, of a Savings Bank book, containing entries of deposits to the credit of the donor, with the intention to give the donee the deposits represented by the book, is a good delivery to constitute a complete gift of such deposits;” that, “a delivery of a chose in action that would be sufficient to vest- an equitable title in a purchaser, is sufficient delivery to constitute a valid gift of such chose in action without a transfer of the legal title;” and that, under statutes which provide “that the assignee of a chose in action may sue upon it in his own name, a delivery *225 of such, chose in action would vest in the donee a legal title.” In a case of the same kind, in New York, Ridden v. Thrall, 125 N. Y., 572, 577, it is said, the gift was consummated by the delivery of the Savings Bank book, “and no other formality to constitute the actual delivery of the bank deposits or vest the possession and title in the donee was needful.” Pierce v. Savings Bank, 129 Mass., 425; Tillinghast v. Wheaton, 8 R. I., 536, and Hill v. Stevenson, 63 Me., 364, are cases of the same kind and in which the courts hold as above stated.
We think, on principle and authority, the gift to the plaintiff was legally consummated, and the judgment in her favor should be affirmed.

Judgment accordingly.