J. S. LANG ENGINEERING COMPANY *vs.* COMMONWEALTH.

Suffolk.   October 16, 1918. — November 27, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Tax,* On domestic business corporation.   *Corporation,* Tax.   *Trust Company,*
Savings department.   *Words,* "Securities."

In computing the amount of the franchise tax to be imposed on a domestic busi-
ness corporation, deposits of the corporation in excess of $2,000 in the savings
departments of trust companies, which can be withdrawn only on presenta-
tion of the pass-books in accordance with the provisions of St. 1908, c. 520, § 1,
are "securities which if owned by a natural person resident in this Common-
wealth would be liable to taxation" and are to be valued accordingly by the
Tax Commissioner under St. 1909, c. 490, Part III, § 43.

If by reason of error or misapprehension certain property of a domestic business
corporation was omitted by the Tax Commissioner from his valuation under
St. 1909, c. 490, Part III, § 43, of the taxable property of the corporation in a
certain year, such omission affords no ground for contending that the error
cannot be corrected in subsequent years.

PETITION, filed in the Supreme Judicial Court on February 7,
1918, under St. 1909, c. 490, Part III, § 70, by a domestic business
corporation, organized on July 10, 1915, under the general laws

of the Commonwealth, for the abatement of the amount of $639.20 alleged to have been assessed and exacted illegally as a part of the franchise tax imposed upon the petitioner for the year 1917, the valuation complained of being alleged to have included wrongly under § 43 of the statute the sums of money deposited by the petitioner in the savings departments of Massachusetts trust companies, which were treated by the Tax Commissioner as "securities which if owned by a natural person resident in this Commonwealth would be liable to taxation."

The case was submitted to *Carroll,* J., upon a stipulation of the parties in regard to the facts that would be testified to by the treasurer of the petitioner. The single justice found that the facts set forth in the stipulation were those that would be testified to by the petitioner's treasurer, if material, and, at the request of the parties, reserved and reported the case upon the pleadings, the stipulation and his finding thereon for determination by the full court.

St. 1908, c. 520, § 1, is as follows: "Every trust company soliciting or receiving deposits (a) which may be withdrawn only on presentation of the pass-book or other similar form of receipt which permits successive deposits or withdrawals to be entered thereon; or (b) which at the option of the trust company may be withdrawn only at the expiration of a stated period after notice of intention to withdraw has been given; or (c) in any other way which might lead the public to believe that such deposits are received or invested under the same conditions or in the same manner as deposits in savings banks; shall have a savings department in which all business relating to such deposits shall be transacted."

*C. Bosson,* for the petitioner.

*W. H. Hitchcock,* Assistant Attorney General, for the Commonwealth.

CROSBY, J. This is a petition under St. 1909, c. 490, Part III, § 70, for the abatement of a corporate franchise tax assessed in 1917 upon the petitioner, a domestic corporation, under §§ 40 to 43, inclusive, of that statute. The case is reserved for the determination of this court upon the pleadings, the agreed facts and certain findings of fact.

It appeared from the tax return filed by the petitioner with the

Tax Commissioner on April 1, 1917, that it had on deposit in the savings bank departments of four Massachusetts trust companies sums of money each in excess of $2,000 and amounting altogether to $43,218.41.   The Tax Commissioner, in assessing the corporate franchise tax due from the petitioner, treated the sums so deposited as "securities which if owned by a natural person resident in this Commonwealth would be liable to taxation."   Accordingly in determining the maximum amount of the tax of the petitioner under § 43, he included the amount of such deposits as taxable securities, and did not include them among the deductions provided for by the statute as securities not liable to taxation, and a tax of $837.36 was assessed. · The sole question is whether these deposits are "securities" within the meaning of § 43 of the statute.   If they are securities within the meaning of the statute, the tax was legally assessed; otherwise, the petitioner is entitled to a partial abatement.

Under St. 1908, c. 520, trust companies were authorized to establish savings bank departments; and § 1 defines the business to be carried on in such departments.   That section of the statute is printed on page 368.   Each of the deposits in the savings bank department of the several trust companies was represented by a book in substantially the same form as in ordinary use by savings banks.   Each book contained abstracts from the by-laws or rules and regulations of the savings bank department of the respective trust companies, substantially in the following form:

"This book must be presented whenever a deposit is made, or money withdrawn.   Should the depositor desire any other person to withdraw money, this book must be sent to the bank together with an order, on a separate paper, and in the form prescribed in the back of the book.

"Money may be usually withdrawn at the pleasure of the depositor but the Trust Company reserves the right to require whenever advisable a ninety day notice in writing of such withdrawals.

"No assignment or transfer of this book will be valid unless recorded on the books of the Company.

"This Company will not be responsible for any payments made on this book in case it is lost or stolen unless notice of such loss or theft has previously been given to the Company in writing."

As the rules above referred to provided that a deposit could be made or money withdrawn only upon the presentation of the book, and as the trust company reserved the right to require "a ninety day notice in writing of such withdrawals," it is plain that the contract between the parties came within clauses (a) and (b) of § 1.

Trust companies having a savings bank department established under St. 1908, c. 520, are required to pay an annual excise tax upon its deposits in that department, assessed at the same rate as that imposed upon regular savings banks upon such deposits as do not exceed in amount the limits imposed upon deposits in savings banks. St. 1909, c. 342, § 1. St. 1911, c. 337, § 1. But it is also provided, St. 1909, c. 342, § 4, that "All deposits taxed under the provisions of section one of this act shall otherwise be exempt from taxation in any year in which said tax is paid."

A deposit in a savings bank is limited to $2,000 to a single person, including accrued interest (subject to certain exceptions not material to the question under consideration), St. 1908, c. 590, § 46, and as the amount of each of these deposits exceeds the limit allowed savings banks, they were not subject to an excise tax to the trust companies, but they would have been taxable under St. 1909, c. 490, Part I, if owned by a resident of this Commonwealth.

While the amounts which may be deposited in the savings departments of trust companies by a single person are not limited, such deposits are in effect deposits in savings banks conducted by such companies. This is apparent from the rules and regulations before referred to. Such deposits have the incidents of a deposit in an ordinary savings bank. Accordingly if deposits in savings banks are "securities," then § 43 of the corporate franchise tax law applies to these deposits.

The legal status of a deposit in a savings bank which is represented by a book in which the contract between the bank and the depositor is stated, has often been considered by this court.

In *Pierce* v. *Boston Five Cents Savings Bank*, 129 Mass. 425, at page 432 it was said that "A savings-bank book has a peculiar character. It is not a mere pass-book, or the statement of an account; it is issued to the person in whose name the deposit is made, and with whom the bank has made its contract; it is his voucher,

and the only security he has, as evidence of his debt. . . . The book is the instrument by which alone the money can be obtained, and its possession is thus some evidence of title in the person presenting it at the bank. It is in the nature of a security for the payment of money."

In *Commonwealth* v. *Reading Savings Bank*, 133 Mass. 16, it was said at page 22: "The books of a depositor are, it is said in *Pierce* v. *Boston Five Cents Savings Bank, ubi supra,* something more than mere statements of account, and partake of the nature of money securities."

In *McCann* v. *Randall*, 147 Mass. 81, it was said at page 94, that promissory notes "may be the subject of a gift, either *inter vivos,* or *causa mortis,* and so may savings bank books, and some other evidences of debt." *Slade* v. *Mutrie*, 156 Mass. 19, 21.

In *Herbert* v. *Simson*, 220 Mass. 480, it was said that a savings bank book is analogous to a stock certificate in many respects.

In *Boston Railroad Holding Co.* v. *Commonwealth*, 215 Mass. 493, it was held that cash on deposit in a national bank or trust company, standing to the credit of a domestic business corporation, was not included in the word "securities" under St. 1909, c. 490, Part III, § 43. In the opinion in that case it was said at pages 496 and 497, "Neither do we think that it is included in the term 'securities.' It is not like money on deposit in a savings bank which is represented by a book containing the contract between the depositor and the bank which may be fairly said to be a security. In its ordinary acceptation the word 'securities' includes bonds, certificates of stock or of deposit, notes, bills of exchange and other evidences of indebtedness or of property, and not mere choses in action."

While the question in the case at bar was not before the court in the case of *Boston Railroad Holding Co.* v. *Commonwealth, ubi supra,* and the language quoted was not necessary to the decision of that case, still we are of opinion that it is a correct statement of the law. *Bellows Falls Power Co.* v. *Commonwealth*, 222 Mass. 51, 65.

It cannot be doubted that books representing deposits in savings banks are evidences of indebtedness or property, and have been so considered in many cases decided by this court; and that the deposits in question are not mere choses in action, but plainly

come within the definition of "securities" as that word is used in § 43 of the corporate franchise statute.

If some person connected with the office of the Tax Commissioner stated to the petitioner in 1916 that, in view of its deposits in savings departments of trust companies, its tax would be less than $100, such statement cannot be held to affect the tax actually due upon a correct assessment; nor is the fact, that in computing the tax of the petitioner for the year 1916 the deposits in question were not treated as securities, material. If by reason of error or misapprehension the tax due from the petitioner in 1916 was incorrectly assessed, there is no reason why the error could not be corrected in assessing the tax in question. *Mutual Benefit Life Ins. Co.* v. *Commonwealth,* 227 Mass. 63, 66.

The tax was correctly assessed; and the entry must be

*Petition dismissed with costs.*