Mr. Justice GRIER
 

 delivered tbe opinion of tbe court.
 

 Tbe purpose of this bill is to obtain an injunction to prevent tbe issuing of certain scrip to appellee by tbe Land Office, and to have cancelled tbe assignment under which tbe appellee , had, by the officers of Government, been adjudged entitled to tbe scrip.
 

 This bill was properly dismissed by tbe court below, as a brief statement of tbe case will show. The aet of Congress of 3d. March, 1835, made a further and apparently final appropriation of six hundred and fifty thousand acres, to be applied to tbe satisfaction of Virginia military land warrants. It provided that “no scrip should be issued thereon until the 1st of September following, -and that warrants should be received in tbe General Land Office till that day; and immediately thereafter, if the amount filed exceeded six hundred and fifty thousand
 
 *580
 
 acres, the Commissioner of the Land Office should apportion the said six hundred and fifty thousand among the warrants which shall then be on file,
 
 in full satisfaction thereof.”
 

 This appropriation was sufficient to pay ninety per cent, of the warrants received.
 

 William S. Scott, as attorney for the heirs of General Charles Lee, filed a warrant in their names for fifteen thousand acres; ■ which'was surrendered and satisfied by the issue, of land scrip ' for thirteen thousand five hundred acres, being ten per cent., or one thousand five hundred acres less than the whole amount called for ‘on the face of the warrants.
 

 The-warrants were therefore fully satisfied; and, being sur rendered,- were no longer evidence of any right of property. But it seems that, notwithstanding this surrender and satisfaction, there was a sort of lingering hope or expectation that some time hereafter, Congress, by continued importunity, might be prevailed up.on to make some further grant of land to satisfy the shadow of equity which was supposed to remain, after the warrantees had Surrendered their warrants and accepted the satisfaction tendered.
 

 On the 30th March, 1837, Scott signed an .instrument in form of a power of attorney, which, after reciting that he had sold to Walker, the complainant, the warrants, and delivered him the scrip issued in lieu thereof, stated as follows: “Now, the object of this power of attorney is to secure the said Walker the said ten per cent, of warrants unsatisfied, or any and every equivalent that may be at any time given in lieu thereof,” &c.
 

 On the 18th of January, 1838, Scott conveys by indenture, in consideration of seven hundred and fifty dollars., and with . warranty, the Lee warrants, on which he alleges there is. “still due one thousand five hundred acres” to defendant. Atjthis time the records of the Land Office contained no evidence of the prior assignment (if such it can be called) to Walker; and a clerk in the office endorsed on the respondent’s deed as follows : “ William S. Scott, the party grantor of the within, has • full authority on file to sell the warrants and appoint a substitute; and in the event Congress makes up the
 
 ten per cent.,
 
 the scrip to be issued will be delivered te Mr. Smith.”
 

 
 *581
 
 Thus the matter stood for fourteen years, when at length, on the 31st of August, 1852, Congress passed an act, which authorized an issue of land scrip in favor of the
 
 present proprietors
 
 of any outstanding military land warrants, &c. This scrip is to be issued by the Secretary of the Interior, who is to make the necessary inquiries, and “ be satisfied by a revision of the proof, or by additional testimony,” &c.
 

 It seems that this act has been construed to include not only unsatisfied warrants, but the ten per cent, not given on the satisfied and surrendered warrants. It is a liberal construction of the statute, and so far as it extends to the scrip in question, it is a simple gratuity. The Secretary is made the agent for its distributioh. It is his duty to ascertain the parties
 
 entitled
 
 to it, if any person can be said to have a title to a gift before it is received. When he issues the scrip, it then becomes a “ chose in action,” capable of being dealt with as property by courts of justice, but not till then. The question, as to-who maybe considered as the “
 
 present proprietor
 
 ” of these surrendered and satisfied warrants, must be decided by him in the first instance by the rules, customs, and practice of the Land Office. Before the act of Congress, this right was too subtle (being no more than the remote expectation of a gift) to be dealt with by courts, and the act of Congress has not conferred on them the distribution of their bounty. Besides, if an injunction was issued to hinder the defendant from receiving the scrip which the Land Office has concluded to give him, this would confer no title on the complainant.
 

 Whether, after the Land Office have issued the scrip to a claimant, another person alleging fraud or misrepresentation, and claiming himself to be the “proprietor ” intended by the act, might not obtain the interference of the courts, to obtain a transfer of the scrip to himself, is a question not presented in this case.
 

 But assuming that the court would undertake to- decide as 1» the respective right of these claimants, treating their claims as tangible equities, the complainant has not made out such a case as would entitle him .to relief. His power of attorney (or whatever it may be called) mentions no consideration paid.
 
 *582
 
 The answer of defendants, which is responsive to the bill, (which avers a purchase at market price,) denies the payment of any consideration whatever, and none has been proved. The defendant has paid a lai’ge and valuable consideration without any notice of the plaintiff’s claim, has made his proofs, has had the decision of the Land Office in his favor. He has obtained an advantage of which a court of equity will .not deprive him under the circumstances.
 

 The judgment of the court below is affirmed with cost.