SAVANNAH NATIONAL BANK *vs.* WILLIAM HASKINS & another.

Two bills of exchange, payable to the drawer's order, one at sight and the other on time, and indorsed by him in blank, were discounted by a bank on the faith of a letter of credit in which the drawee expressly promised the bank to honor the drawer's drafts whether at sight or on time, and then, after being specially indorsed by the bank, were lost by accident, in the course of transmission to the special indorsee, and the drawee refused acceptance and payment without presentment of the original bills. *Held*, that the bank might maintain a bill in equity to enforce payment by the drawee on such terms as in the discretion of the court would secure him from all appreciable injury.

BILL IN EQUITY inserted in an original writ of summons and attachment, alleging that the defendants, doing business at Boston in this Commonwealth, under the firm of William Haskins & Son, "entered into a contract at said Boston with, and there issued a letter of credit bearing date February 6, 1868, addressed to," the plaintiffs, a corporation established at Savannah in the state of Georgia, "whereby the defendants agreed to honor drafts drawn on them by James T. Paterson, at that time of said Savannah, to the amount of $5000 per month, at sight or on time; and that, relying on said agreement and letter of credit of said William Haskins & Son with and to the plaintiffs, the plaintiffs negotiated and received from said Paterson drafts drawn thereunder by said Paterson on said William Haskins & Son, as follows:" and then reciting two drafts dated in March 1868, for $2200 in all; three drafts dated in April 1868, for $3700 in all, two of them, dated respectively April 9 and April 28, for the sums respectively of $1000 and $1500, the first at sight and the second on thirty days; and one draft, dated May 15, for $1000.

The bill further alleged that all of these drafts were honored by the defendants, except the two dated respectively April 9 and April 28; that these two drafts, drawn payable to the order of the drawer, and "duly indorsed by him and by John N. Lewis, cashier of the plaintiffs, and made payable to the order of the Fourth National Bank of New York, were, on the days of their respective dates, placed in the mail at said Savannah, addressed to the said Fourth National Bank of New York; that the officers of the plaintiffs have been informed and believe that the mails which left Savannah on those days were robbed, and said drafts were lost, stolen or destroyed; that Paterson died on May 16, 1868, and on May 22 the plaintiffs applied for duplicates of the two drafts, to Edward A. Roher, who during the lifetime of Paterson had been his authorized attorney, and obtained from him duplicates of said two lost drafts, and sent the same to the said Fourth National Bank at New York by mail, which bank sent the same to the First National Bank at Boston to be collected of the defendants;" but that the defendants, on the due

presentment of these duplicates on May 27 and May 30, refused to accept or pay them, and suffered them to go to protest, and never afterwards paid them, but denied all liability.

The bill then alleged the willingness of the plaintiffs to execute and give to the defendants such a bond of indemnity as to the court might seem meet, to protect the defendants against the risk of paying the two drafts a second time, and to enable them to recover of the estate of Paterson in such manner as circumstances might require; and prayed for a decree to compel the defendants to pay the amount of the drafts, with interest and costs of protest, on receiving such indemnity, and for general relief. An affidavit of the loss was annexed.

The defendants filed a demurrer, denying jurisdiction for want of equity; and the case was thereupon reserved by *Ames, J.,* for the determination of the full court.

*H. C. Hutchins,* for the defendants. 1. The bill cannot be maintained upon the lost drafts, as having been accepted by the defendants. They were not in fact accepted. And they were not so described and identified in the defendants' letter of credit as to bring them within the principle of the cases which treat promises to accept as actual acceptances. 1 Parsons on Notes & Bills, 296. *Banorgee* v. *Hovey,* 5 Mass. 11. *Storer* v. *Logan,* 9 Mass. 55. *Carnegie* v. *Morrison,* 2 Met. 381. *Coolidge* v. *Payson,* 2 Wheat. 75. *Boyce* v. *Edwards,* 4 Pet. 111. The promise in the letter was, to honor drafts, at sight or on time, not exceeding in the aggregate a certain sum per month. There was no identification of any specified drafts, either by date or amount, or otherwise. Besides, one of the drafts lost was payable at sight, and no action has ever been maintained upon such drafts as accepted, upon a mere promise to accept. *Wildes* v. *Savage,* 1 Story, 28. No action has ever been maintained in this Commonwealth upon a promise to accept, as an actual acceptance; and the recognition of such a doctrine elsewhere has been regretted. 1 Parsons on Notes & Bills, 295. *Johnson* v. *Collings,* 1 East, 98. *Wildes* v. *Savage,* 1 Story, 22. And further, it is unnecessary in this case to resort to such a doctrine, because the plaintiffs have a complete remedy, if they

are entitled to any, in an action upon the promise to accept.   1 Parsons on Notes & Bills, 295, 296.   *Wildes* v. *Savage*, 1 Story, 22.   *Boyce* v. *Edwards*, 4 Pet. 111, 121–123.

2.  Under their letter of credit, the defendants are liable only on drafts actually presented and surrendered on payment.  They have a right on payment to have the drafts delivered to them to be used as vouchers in their settlement with the drawer, and en‑ able them to establish their claim against him.   Story on Bills, § 448.   *Tuttle* v. *Standish*, 4 Allen, 481.   *Hansard* v. *Robinson*, 7 B. & C. 90.   The reasons assigned by the court in *Tuttle* v. *Standish* for refusing a remedy at law are equally applicable, in the case at bar, to a suit in equity.   No bond of indemnity nor copies of the drafts can supply the place of the originals to the defendants, in prosecuting their claim against the estate of the drawer.   From the nature of the case, they cannot have within their possession or control any evidence to substantiate any claim against the estate of Paterson, the drawer, for any sum paid by them on the lost drafts.   The principle on which a re‑ covery is allowed on a lost bill or note is, that the plaintiff shall, by bond of indemnity, or perhaps otherwise, do that which will put the defendant in as good a position practically as if the orig‑ inal were produced in court; and that cannot be done in this case.   If the plaintiffs have lost the drafts without their fault, it is their misfortune; but they have no right to impose on the de‑ fendants the burden of establishing their claims upon a third party without such vouchers, and compel them, in addition, to give bonds in another jurisdiction to enforce their rights.   If the drawer was within the jurisdiction of this court, and made a party to this suit, the objection might be overcome; but as it is, it is insuperable.   Further, one at least of the lost drafts was payable at sight.   Presentment was a condition precedent to any liability of the defendants upon it.   It would never mature until presented.   The same reason which would prevent a sight draft from being treated as accepted without actual acceptance would prevent any liability for not accepting if lost before ac‑ ceptance.   And further still, an acceptor guaranties the genu‑ ineness of the signatures of the drawers, and the defendants had

a right to have the drafts presented, to enable them to determine their genuineness. The indemnity needed by them is not so much against lost drafts which are unaccepted, as against unauthorized or forged drafts and indorsements. *Tuttle* v. *Standish*, 4 Allen, 481.

3. If the plaintiffs have any remedy, it is complete at law. A party cannot have a remedy in equity merely because his bill or note is lost, but only when an indemnity is required. An indemnity is not required for these plaintiffs; because the drafts were specially indorsed. *Moore* v. *Fall*, 42 Maine, 450. 2 Parsons on Notes & Bills, 289–291, 303. They are exposed to no hazard thereon which entitles them to maintain this suit. Nor is any indemnity required from the plaintiffs; as there can be no possible claim upon the defendants upon lost drafts which have never been accepted. So there is no occasion for indemnity, and no reason to resort to a court of equity at all.

*F. E. Parker,* for the plaintiffs.

COLT, J. The plaintiffs seek to enforce payment of certain drafts, drawn by Paterson upon the defendants, which, by their letter of credit containing an express promise to the plaintiffs, the defendants were bound on presentment to accept and pay. The drafts were discounted by the plaintiffs, sent on by mail for acceptance, and lost in course of transmission without fault of the plaintiffs. The death of the drawer made it imposssible to procure duplicates. The bill offers indemnity such as the court may order, and an affidavit of loss is annexed.

Considering the defendants' letter of credit as a promise to accept and pay, made upon the commercial condition of presentment and surrender of the drafts, a case is stated, where, without fault, the plaintiffs have been deprived of the power to comply with the condition. And a majority of the court are of opinion that it comes within that relief which courts of equity administer in cases where recovery at law is precluded by reason of the loss of a written instrument, to the possession of which the defendant is, by the terms of his contract, entitled upon the performance of his promise.

This jurisdiction in equity is most commonly referred to the head of accident. And an accident, when arising in relation to contracts, has been defined, in the sense used in a court of equity, to be an occurrence which was not anticipated by the parties when the contract was entered into, and which gives an undue advantage to one of them over the other in a court of ᴌaw. 1 Story Eq. §§ 79 note, 86, 87. *Hansard* v. *Robinson*, 7 B. & C. 90. *East India Co.* v. *Boddum*, 9 Ves. 468. Adams Eq. 166.

The contract of an acceptor of a bill of exchange is, that he will pay upon presentment of the identical bill. He has the right to insist upon the condition. And yet the power of a court of equity to compel payment without it, upon suitable indemnity, is well recognized in England. In *Davies* v. *Dodd*, 4 Price, 176, a remedy was afforded against an accommodation acceptor of a lost bill, to compel payment, and it was said that the plaintiff's equity was founded in the want of power in courts of law to regulate the security to be given to the defendant against the forthcoming bill. *Mc Cartrey* v. *Graham*, 2 Sim. 286, was a bill to enforce payment of the defendant's acceptance, brought by the last of several indorsers. It contained an offer of indemnity against the draft, which was stolen from the mail coach in the course of its transmission. The demurrer, which was for want of equity and want of parties, was overruled ; the vice-chancellor remarking that the objection for want of parties would not avail, because the acceptor, being primarily liable, by paying the bill discharges the other parties from all liability. In *Hansard* v. *Robinson, ubi supra,* Lord Tenterden declared that the plaiᴉtiff, though he could not prevail in law against the acceptor of a lost bill, was not without remedy, for he ᴄᴏuld enforce payment in equity. *Davis* v. *Dodd.* 4 Taunt. 602. 2 Parsons on Notes & Bills, 297 note. Story on Bills, § 447.

In the case at bar, assuming that the defendants' letter of credit is not, under the decisions, to be regarded as an accept‧ ance, yet it was a contract with the plaintiffs subject to precisely similar conditions, upon the strength of which the bank dis‧ counted the draft in question. It comes fairly within the prin

ciple upon which relief is afforded, and cannot in this respect be distinguished from an actual acceptance. *Carnegie* v. *Morrison*, 2 Met. 381. If the defendant is reasonably indemnified from harm, he has no reason in either case to refuse payment.

The demurrer in this case cannot be sustained on the ground that there is adequate relief at law. Under the earlier decisions of this court, and before full equity powers were conferred, it was held that a recovery at law might be had upon a lost note, the plaintiff giving a bond of indemnity. It is not clear, even under the pressure created by the sense of injustice which would ensue to the plaintiff if left without remedy in such cases, that the court intended to decide that a recovery could be had in all cases against an indorser or acceptor upon giving a simple bond of indemnity. There is now full equity jurisdiction ; and, since the late case of *Tuttle* v. *Standish*, 4 Allen, 482, in which this whole subject is thoroughly reviewed, it can no longer be contended that a recovery at law can be had against an acceptor or indorser, upon a simple bond protecting the defendant from being called on to pay a second time to a *bonâ fide* holder. The acceptor of a bill of exchange not only has a right to such protection, but he has a right to have the bill surrendered to him on its payment, to be used as a voucher in his settlement with the drawer.

The remedy afforded by a court of equity in such cases is appropriate and complete. Without embarrassment from the technical rules which control the administration of courts of law, it adapts its decrees and process to the circumstances of each case as it arises. In all cases where, by the accidental loss of the note or bill, the plaintiff cannot comply with the defendant's right under his contract to have the identical instrument surrendered, and it is within the power of the court to secure the defendant from all appreciable injury, relief will be decreed to the plaintiff in equity, upon terms and conditions which will secure and protect the rights of all. And it can make no difference in principle whether the defendant's contract is an acceptance or only a promise to accept.

It is urged in support of the demurrer, that it is not in the power of the court so to frame its decree as to leave the defendants, after payment, in as good condition with respect to their claim upon the drawer as if placed in possession of the drafts; that the burden of establishing the claim upon a third party without vouchers cannot be imposed upon them as a result of the misfortune of the plaintiffs. In reply to this, it is sufficient that, in the present stage of the case, it does not appear that all the defendants' rights may not be fully secured. That will depend upon future developments. It may be shown at the hearing, that the defendants were at the time, or have since been, placed in funds by the drawer to meet these drafts. The plaintiffs may produce a release from the drawer, or his present legal representatives, dispensing with the production of them as vouchers in settlement with the estate. Or it may in some other way be made to appear that a bond of indemnity with the usual condition, and the further provision that no cost, expense or damage shall be suffered by the defendants in their relation to the drawer or his estate by reason of the payment of the drafts, will be found ample to preserve all their rights. The nature of the security to be required can only be determined upon a hearing on the merits.

It is further contended that, if the plaintiffs have any remedy, it is complete at law, because the drafts were specially indorsed. If the fact were as urged, it would for the reasons above stated seem to be no ground for excluding equity jurisdiction. But, as we understand the facts, the drafts were originally indorsed in blank, and were only restricted by the plaintiffs' indorsement. This does not prevent them from passing by delivery, because any holder may fill up the blank indorsement directly to himself. *Smith* v. *Clarke*, Peake, 225.     *Demurrer overruled.*