WILLIAM McCANN vs. SIMON F. RANDALL & another.

Suffolk.    March 11, 1887. — May 7, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
&  KNOWLTON, JJ.

*Statute of Limitations — Superior Court — Jurisdiction — Contempt — United
States Treasury Draft — Non-resident Payee — Equitable Attachment.*

The statute of limitations of this Commonwealth is no defence to an action on a
promissory note by a non-resident payee, who has always resided in the State
where it was made and where such an action is not barred, although the maker
has removed therefrom to a third State, the statute of which is there a bar to
such an action.

A United States Treasury draft, which was issued upon the award of the Court of
Commissioners of Alabama Claims, payable to a non-resident and found here
unindorsed in the custody of an agent, may be reached by a creditor of the
payee by a bill in equity under the Pub. Sts. c. 151, § 2, cl. 11, against both the
payee and the agent, although personal service is made upon the agent alone,
and the payee appears only specially to object to the jurisdiction; and if such
agent, in contempt of an order of the court, delivers up the draft and procures
its payment to the payee, a decree may be made that he pay the draft out of
his own property after deducting the amount of any lien of his thereon. FIELD
& W. ALLEN, JJ., dissenting.

BILL IN EQUITY, filed February 4, 1885, in the Superior Court,
to reach and apply, in payment of a promissory note given by the
defendant Randall to the plaintiff, a United States Treasury draft
payable to the order of Randall and in the possession of the de-
fendant Manning.    The prayer of the bill was for an injunction
to prevent the delivery up or the negotiation of the draft by Man-
ning, who was a resident of Boston, and upon whom personal
service was made.    Service by publication only, in accordance
with an order of notice duly issued, was made upon Randall, who
was a resident of New York.    The defendants, of whom Randall
appeared specially, demurred to the bill for want of jurisdiction,
on the ground that the debt was barred by the statute of lim-
itations and for want of equity.    The demurrers were overruled,
and the defendants appealed to this court.    Hearing before
*Barker*, J., who found the following facts.

The draft, which was for $2,646.02, the amount of an award to
Randall by the Court of Commissioners of Alabama Claims, was

made payable to him at the United States Sub-Treasury in Boston, and was delivered to Manning as his attorney of record. When an injunction was issued, on February 4, 1885, as prayed for, and, on February 6, 1885, was personally served on Manning, the draft was in his possession and control in Boston, and had not been indorsed by Randall. Thereafter Manning, upon the payment to him of $793.81, the amount of his lien thereon, as mutually agreed by them, for his services and disbursements in securing the award, sent the draft to Randall, and procured his indorsement of it and its subsequent payment at the Sub-Treasury on March 28, 1885, the balance of $1,852.21 being handed over to Randall or his agents. On January 22, 1886, a process of attachment for contempt was issued against Manning, as it appeared that he had violated the injunction wilfully and with full knowledge; but at that time he was without, and has continued to remain without, the limits of the Commonwealth, and no service of the order of attachment was ever made upon him.

On January 18, 1869, Randall, then a resident of Maine, for a good consideration, made the note in question, payable to the order of the plaintiff, who was also a resident of that State and has ever since resided there. But on November 1, 1874, Randall removed his residence and domicil to New York, and since that time he has never been within the State of Maine. An action upon this note was not barred by the statute of limitations of Maine (Rev. Sts. of Maine of 1883, c. 81, § 103), by which actions upon promissory notes must be brought within six years after the cause of action accrued, and actions brought thereafter are barred, except that, " if a person is absent from and resides out of the State after a cause of action has accrued against him, the time of his absence shall not be taken as a part of the time limited for the commencement of the action." The statute of limitations of New York, by which actions upon such notes must be brought within six years from the time when the cause of action accrued, was a bar to an action on the note in that State; but as the plaintiff had never resided in New York or elsewhere without the State of Maine, an action against Randall was not barred by the law of another State or country while the plaintiff had been a resident therein.

The plaintiff agreed, in case he was entitled to recover in the

suit, to share proportionately the sum recovered by him with one
Willard, who simultaneously had filed another bill in equity to
apply the same draft to the payment of a debt due to him by
Randall.

The defendants requested the judge to rule that the case was
not within the equity jurisdiction of the Superior Court; that an
action on the note was barred by the statute of limitations; that
the draft was not " goods, effects, or credits, or right, title, or in-
terest " of Randall, such as could be reached in this proceeding;
and that a United States Treasury draft could not before pay-
ment be reached by an equitable trustee process or otherwise.
The judge refused so to rule, made a decree that Manning, be-
cause of his contempt in disposing of the draft, should pay out
of his own goods and estate to the plaintiff and to Willard, in
their proper proportions, the balance of the draft over and above
the amount of his lien, with interest thereon from March 28,
1885, to the date of the decree; and reported the case for the
determination of this court.

*C. Cowley*, for the defendants.

*E. P. Payson*, ( *W. E. Spear* with him,) for the plaintiff.

DEVENS, J.  The defendant Randall is not entitled to a de-
fence by virtue of our statute of limitations against the promis-
sory note now held by the plaintiff, upon the ground that the bill
was not brought within six years from the time the cause of
action accrued.  He is not, and never has been, an inhabitant of
this State, and our statute never began to run in his favor.  No
personal service has been made upon him, but a suit against him,
with an effectual attachment of his property in this State, or of
his goods, effects, or credits here situate in the hands of others,
by trustee process, or proceeding similar to that in the case at
bar, would be binding upon him to the extent to which property
was attached or sequestered, sufficient notice having been given
to him by publication or otherwise of its pendency.  *Putnam* v.
*Dike*, 13 Gray, 535.

It is the contention of the defendant Randall (who has ap-
peared specially) that the plaintiff is within the disability im-
posed by the St. of 1880, c. 98, (Pub. Sts. c. 197, § 11,) which
provides that "no action shall be brought by any person whose
cause of action has been barred by the laws of any State, Terri-

tory, or country, while he has resided therein." He urges that the note in suit is now outlawed as against the plaintiff by the statutes of Maine (in which State the plaintiff resided when the note was given, and where he has ever since resided), unless the defendant Randall should return within the limits of that State, and that there is, and can be, no presumption that he will so return. It is found as a fact, that Randall made the note in suit on January 18, 1869, he being then a resident of the State of Maine; that on November 1, 1874, he removed his residence and domicil to the State of New York, where he has resided continuously, and that since that time he has never been in the State of Maine. It is further found, that, by the laws of Maine, suits upon promissory notes must be brought within six years after the cause of action accrued, and suits brought after the expiration of said six years are barred, except that, " if a person is absent from and resides out of the State after a cause of action has accrued against him, the time of his absence shall not be taken as a part of the time limited for the commencement of the action." Rev. Sts. of Maine of 1883, c. 81, § 103. Upon this evidence, the presiding judge was justified in finding as a fact that the plaintiff's claim was not barred by the statutes of Maine.

By the departure of the defendant Randall from Maine, and his residence elsewhere, the statute of limitations ceased to run in his favor and against the plaintiff. This has prevented the outlawry of the note, and, so far as the statutes of Maine are before us, we cannot see why an action might not now be maintained by the plaintiff against Randall in that State, if he could find property there to attach, and thus enable the court to obtain jurisdiction in the absence of Randall personally. When this bill was brought, any action by the plaintiff in the courts of New York was there barred, as the statute of limitations of that State is found to exist, Randall having resided there more than six years. But as the plaintiff never resided in New York, his action against Randall is not barred by the law of any State or country while the plaintiff has resided therein, which is the condition provided by our own statute that would prevent his maintaining an action in this Commonwealth.

It is contended that the draft mentioned in the plaintiff's bill is not of the property, or goods, effects, or credits, or of any right,

title, or interest of the defendant Randall, and that neither it nor its proceeds can be reached by this proceeding in the nature of an equitable trustee process, or otherwise. We proceed to consider this question without regard to the character of the draft, which was one issued by the authority of the United States, and payable to the order of Randall at the Sub-Treasury of the United States in Boston. The draft was itself in the actual custody of the defendant Manning, who was entitled to a lien upon the same and its proceeds, for certain services and disbursements. This lien was for a smaller amount than the draft, and Randall was entitled to the overplus.

It will be unnecessary to consider what would be the powers of the Superior Court under the general equity jurisdiction conferred upon it by the St. of 1883, c. 223, as the case at bar comes within the express provisions of the Pub. Sts. c. 151, § 2, cl. 11, which permit "bills by creditors to reach and apply, in payment of a debt, any property, right, title, or interest, legal or equitable, of a debtor, within this State, which cannot be come at to be attached or taken on execution in a suit at law against such debtor." This clause was amended by the St. of 1884, c. 285, the purpose of the amendment being to extend its construction to certain cases to which it had been held that it did not apply; and its intention, when taken in connection with the Pub. Sts. c. 151, § 2, is seen to be to make "any property of a debtor" applicable to the payment of his debts, whether he is personally within the jurisdiction or not. That the right or property of Randall in the Treasury draft could not be come at to be attached, or taken on execution, will be conceded, and the property, title, or interest of Randall therein is of the same character as that which has been repeatedly held to make the actual holder in whose custody such securities are found liable to this process as the equitable trustee of the party sued.

While notes, drafts, etc., are often said to be evidences of debt rather than the debts themselves, they represent the debts, and the right to collect such debts is by means of them transferred from one to another. Under the clause of the statute of frauds relating to contracts for the sale of goods, wares, and merchandise, it has been held that contracts for the sale of notes were included. *Baldwin* v. *Williams*, 3 Met. 365, 367. Such securities are them-

selves the subjects of common sale and barter, have a market value, are intended to be transferable, and, when transferred, to convey the debts secured in a visible and tangible form. *Somerby* v. *Buntin*, 118 Mass. 279. The cases in which it has been decided that the possessor of promissory notes, signed by third persons, in which a debtor against whom suit had been brought had a valuable interest, might be held by the equitable trustee process to apply them, when collected, to the payment of the creditor's debt, are quite numerous. *Davis* v. *Werden*, 13 Gray, 305. *Moody* v. *Gay*, 15 Gray, 457. *Crompton* v. *Anthony*, 13 Allen, 33. *Barry* v. *Abbot*, 100 Mass. 396. " The plaintiff," says Mr. Justice Bigelow, in *Davis* v. *Werden, ubi supra*, in speaking of the St. of 1851, c. 206, on which the clause we are considering is founded, " has a claim against one of the defendants, who resides out of the Commonwealth, and who is the owner of choses in action which are in the hands of an agent residing here. This is the exact case provided for in the statute." If the possessor of the notes has himself had a just claim or lien upon them, or the proceeds to be derived from them, on the most obvious principles of justice this claim or lien has been provided for in any decree that has been made as to the application of them. *Silloway* v. *Columbia Ins. Co.* 8 Gray, 199. *Barry* v. *Abbot, ubi supra*. Nor can it be important that the party liable on the note is not a resident of this State, or served with process. While the remedy of the creditor may be less convenient, or perhaps less effectual, on this account, he should not therefore lose the benefit he is entitled to by reason of the possession in a third person's hands, in this State, of a valuable security in which his debtor has a property or interest, even if such security must be realized or suit brought upon it without the State.

The defendants contend that, as no personal service was made upon Randall, and as he is not before the court except as he has specially appeared to object to the jurisdiction, there can be no assignment or transfer of any right or property which he may have in the draft. The draft, although negotiable in form, had not been indorsed by him, but delivery of it to Manning, or the possession of it by him with Randall's consent, operated as an equitable assignment of it. It is true that no order could have been passed which would compel Randall personally to indorse it,

but means are, by necessary implication from the statute, to be found by which the creditor should obtain the benefit of it; whether by an order appropriating it to the benefit of the creditor by sequestration to his use, by a sale on execution, by a sale with a transfer thereof by an order made by authority of this court, or by a trustee specially ordered to transfer it, or perhaps by an order that the property shall be held until the debtor shall himself (even if not personally within the jurisdiction of the court) consent to apply it to the payment of his creditor, we need not now determine. The property sought to be reached and applied is to be so appropriated by "means," to use the phrase of the statute, "within the ordinary procedure of the court." In any order relating to such application, proper provision would be made for the just claim which the defendant Manning had upon it. *Grew* v. *Breed*, 12 Met. 363, 370. *Robinson* v. *Robinson*, 9 Gray, 447, 450. *Norton* v. *Piscataqua Ins. Co.* 111 Mass. 532, 535. *Walsh* v. *Walsh*, 116 Mass. 377, 382. *Felch* v. *Hooper*, 119 Mass. 52. Perry on Trusts, 820 *a*. Daniel Neg. Instr. § 741.

It is further urged, that, as the draft in question was one drawn by the Treasurer of the United States upon the Sub-Treasury in Boston, and was what is known as a Treasury draft, there could be no appropriation of it, by any legal proceeding, to the benefit of the creditor. The proposition mainly relied on is, that as the government of the United States could not be sued as the sovereign power, and that as the Assistant Treasurer, upon whom the draft was drawn at Boston, had he seen fit to refuse to recognize the judicial transfer of the draft, in whatever form made, could not have been compelled by any order of this court to pay the money due thereon, there could be no transfer of it, or of Randall's right therein. The government of the United States, as a party to a contract, agreement, trust, bond, or instrument, as a note, draft, or order, is like a private party, except so far as it regulates by law its liability. It may make, and has made, many contracts with it unassignable, sometimes partially, sometimes entirely so, as its own convenience seemed to dictate, in the administration of public affairs, although even in these cases transfers by operation of law, by assignment to creditors, by will, or by descent, have usually been recognized

as constituting sufficient assignment of the claim or contract. *Milnor* v. *Metz*, 16 Pet. 221, 222. *Erwin* v. *United States*, 97 U. S. 392. *Goodman* v. *Niblack*, 102 U. S. 556.

When the United States becomes a party to negotiable paper, whether note, bill of exchange, or draft, the responsibility which it assumes is the same as that assumed by any private person. It cannot, indeed, be sued except as it consents to be, and it may not be possible to reach and control its officers by the same processes that may be applied to private individuals. It was held in the celebrated case of *The Floyd Acceptances*, 7 Wall. 666, that the government of the United States had the right to use bills of exchange for the purpose of conducting its operations, as an appropriate means, and that it was bound by the same principles that govern individuals in their relations to such paper. The only important question was, whether Mr. Floyd, the Secretary of War, had authority as the agent of the United States, by virtue of his office, to accept the bills drawn upon him. In *Bank of Republic* v. *Millard*, 10 Wall. 152, where the question was whether the holder of a bank check could sue the bank under the circumstances stated, the court remark: " It is hardly necessary to say, that the check in question having been drawn on a public depositary, by an officer of the government, in favor of a public creditor, cannot change the rights of the parties to this suit. The check was commercial paper, and subject to the laws which govern such paper, and it can make no difference whether the parties to it are private persons or public agents." This is but a restatement of what had been often previously decided. *United States* v. *Bank of Metropolis*, 15 Pet. 377, 392. *Walker* v. *Smith*, 21 How. 579. *Pennsylvania* v. *Wheeling Bridge*, 13 How. 518, 560. *Pierce* v. *United States*, 7 Ct. of Cl. 65, 68.

A suit to compel the assignment of a bond or other security of a State in no way affects the sovereignty of such State. *Pingree* v. *Coffin*, 12 Gray, 288, 321. That the draft in the case at bar was drawn by authority of law, and in the usual course of business, cannot be disputed. It operated as a payment of Randall's claim, and constituted a new contract with the government, in which any previous claim was merged. It was valid and binding on the United States in the hands of any

*bona fide* holder thereof by indorsement for a valuable considera-
tion, whether suit could have been brought upon it or not, as
commercial bills of exchange and promissory notes are between
individuals, whatever objections there may have been to the
original settlements or claims on which they were issued.
*McKnight* v. *United States*, 13 Ct. of Cl. 292, 305.   U. S. Rev.
Sts. § 308.   *McKnight* v. *United States*, 98 U. S. 179.

The claim originally held by the defendant Randall was not,
properly speaking, a debt due from the United States, but arose
from the fact that the United States held certain funds received
from Great Britain, under a treaty with that power, which were
to be distributed, through appropriate channels, to those who
had suffered from depredations upon our commerce during the
late civil war.   This in no way affected the character of the
draft, which was given in pursuance of an adjudication in favor
of Randall by the Court of Commissioners of Alabama Claims.
Even before merger in the draft, the equitable interest in such
a claim would have passed to an assignee in bankruptcy.   *Leon-
ard* v. *Nye*, 125 Mass. 455.   It cannot be assumed that the
Assistant Treasurer of the United States would have disregarded
any transfer of the draft by operation of law, or in the course
of judicial proceedings conducted by a court having jurisdic-
tion over the person of the actual holder thereof, who was in
possession of it by virtue of his relation to or authority from
Randall, to whose order it was payable.   Nor, had payment
thereof been refused, would the transferee have been remediless.
The Court of Claims of the United States would have been open
to him, and it has the right, under the statutes which give it
jurisdiction for the purpose, to hear and determine all claims
"founded upon any contract, express or implied, with the Gov-
ernment of the United States."   *Milford* v. *Commonwealth*, 144
Mass. 64, and cases cited.

It has been found that the debt was actually due from
Randall to the plaintiff, and, after service of process in this
case upon Manning, and after service of an injunction upon
him, forbidding its transfer to Randall, the draft being at that
time in Boston, the amount claimed by Manning as due upon his
alleged lien was settled by mutual agreement, and the draft was
sent to Randall in New York, and was there indorsed by him.

Payment of it was made at the Sub-Treasury in Boston thereafter, and the amount received by Randall, or his agents, was the sum of $1,852.21, which was the amount due over and above $793.81, which had been settled as the amount of Manning's lien, and which Manning then or previously received. As the rights of the parties were fixed, at the time of the notice of the *lis mota*, no temporary injunction was perhaps necessary forbidding any transfer of property until the final decree. *Maxwell* v. *Cochran*, 136 Mass. 73, 74. But it is found that the indorsement and payment of the draft were procured by Manning in wilful disobedience of the order of the Superior Court, and in contempt of its lawful authority. Under these circumstances he has incurred a liability commensurate with the value of the property which he has thus succeeded in withdrawing from the control of the court, and prevented from being applied to the lawful claims of Randall's creditors. Proceedings for contempt may be either for the purpose of inflicting punishment upon one who has wilfully disobeyed a lawful order of the court, or for the purpose of obtaining the result which might have been reached by the enforcement of its decree but for the intervention of the wrongful act of the party violating its order, or in appropriate cases for both purposes. *Cartwright's case*, 114 Mass. 230. *Maxwell* v. *Cochran*, *ubi supra*. *Stimpson* v. *Putnam*, 41 Vt. 238. *Thweatt* v. *Gammell*, 56 Ga. 98. *Matthews* v. *Spangenberg*, 15 Fed. Rep. 813.

With the suit brought by the plaintiff was also heard one brought by one Willard, under precisely similar circumstances, which for that reason does not require any separate consideration, as there was no dispute between the plaintiff and Willard as to the proportions in which they were to receive the fund if it was appropriated to them.

We are of opinion that the presiding judge in the Superior Court rightfully held that Manning was bound to make up and pay to the plaintiff, and others standing in like relation, the balance of the draft over and above the sum of $793.81, namely, the sum of $1,852.21, with interest thereon from March 28, 1885 (which was the day of payment of the draft), to the making of the final decree. A majority of the court is of the opinion that the entry should be,          *Decree affirmed.*

FIELD, J.   Mr. Justice William Allen and myself are unable to assent to the opinion of the court.   The decree in this case is not a decree in the proceedings for contempt against Manning, and the question need not be considered whether Manning could not be punished for violating the injunction, although the bill should be dismissed.   The decree is the final decree in the cause, and it proceeds against Manning on the ground that he has, during the pendency of the suit, put wrongfully out of his possession property of Randall which had been equitably attached in the suit, and which he could have been compelled to deliver to the court or to the plaintiff, to be applied in satisfaction of the debt due from Randall to the plaintiff.

The first questions of law arise upon the appeal from the orders overruling the demurrers of each of the defendants, but the same questions of law are raised upon rulings requested which were refused.   The fundamental question in the case is whether the Superior Court had any jurisdiction over the draft, to apply it to the payment of the debt due to the plaintiff from Randall.   Manning's interest in the draft could not be so applied, because he was not indebted to the plaintiff.   After Manning had been paid the amount of his claim, he held the draft as an agent or bailee of Randall.   The court had no jurisdiction to render a personal decree against Randall, as he had never been a resident of the Commonwealth, or served with process within the Commonwealth, or appeared generally in the suit.   This is now the settled law, under the Constitution of the United States; and before the adoption of the Fourteenth Amendment of that Constitution it was settled here that no decree in equity could be rendered against such a defendant, which could bind him personally to do anything.   *Spurr* v. *Scoville*, 3 Cush. 578.   *Moody* v. *Gay*, 15 Gray, 457.   *Walling* v. *Beers*, 120 Mass. 548.   *Eliot* v. *McCormick*, 144 Mass. 10.   As was said in *Moody* v. *Gay, ubi supra*, " A court of equity can only deal with persons who can be compelled by process to perform its decrees; and with property, which is either situated within the limits to which its jurisdiction extends, or which can be reached through the action of parties who are amenable to its authority."

The draft was drawn by one officer of the United States upon another officer, payable out of the moneys of the United States,

and it was in effect a negotiable promissory note of the United States. *Commonwealth* v. *Butterick*, 100 Mass. 12. *Miller* v. *Thomson*, 3 M. & G. 576. The United States were not, and could not have been made, parties to the suit. If this draft had been drawn by a private person upon himself, and he had been a resident of this Commonwealth, it might be contended that he would have been liàble to trustee process in an action at law against Randall; for although a complete copy of the draft does not appear in the papers, it is not contended that the draft was payable on time. Whether this could have been done in the case supposed, and Manning have been admitted as a claimant to the extent of his interest, is immaterial in the case at bar, because the United States are not amenable to trustee process, and therefore this remedy at law does not exist. Pub. Sts. c. 183, § 34, cl. 1. *Macomber* v. *Doane*, 2 Allen, 541. *Darling* v. *Andrews*, 9 Allen, 106. *Scott* v. *Hawkins*, 99 Mass. 550. *Fay* v. *Sears*, 111 Mass. 154.

As the United States are not amenable to any process issuing from a State court, the inquiry is, whether there is any procedure in this Commonwealth whereby a creditor can reach, and apply to the payment of a debt due to him from the defendant, a debt due to the defendant from another person, when neither the defendant nor that other person is amenable to the process of the court. The case may be considered as if the facts were that a citizen of Maryland, in payment of a debt, had given his promissory note to a citizen of New York, payable to him or his order, and had intrusted the note to a citizen of Massachusetts for delivery to the payee, and a citizen of Maine had attached the note by the equitable process used in this suit while it was within the Commonwealth and held by the citizen of Massachusetts for the purpose of delivering it to the payee.

It is conceded that a State has jurisdiction over all persons and property within its limits, and may subject all property found within its limits to the payment of debts due not only to its citizens, but to the citizens or subjects of other States whom it permits to sue in its courts. To what extent, and in what manner, such property may be taken, depends upon the law of the State. Other States may or may not recognize titles to property acquired in this manner, but the courts of a State must proceed according

to the statutes of the State, if they are constitutional and valid statutes, and according to its customary law. It is now considered that a person who has never been a citizen of a State, or domiciled within it, and who is not personally found within it and served with process, or who has not by an appearance in the suit, or by contract, or in some other manner, submitted himself to its jurisdiction, owes no duty to the State to appear before and submit himself personally to the decision of its courts. *Schibsby* v. *Westenholz*, L. R. 6 Q. B. 155. *Freeman* v. *Alderson*, 119 U. S. 185.

It has been suggested that, even if the court could not directly apply this draft to the payment of the debt due from Randall to the plaintiff, it could sequester it for the purpose of compelling Randall to perform any decree it might render against him. No such attempt, however, was made in this case. A writ or commission of sequestration is a process of contempt against the property of the defendant, for the purpose of compelling him to obey, or perform, some order or decree of the court. After the subpœna has been served, it may be issued to compel him to appear or to put in his defence, or to obey any decree, interlocutory or final, which the court has made. Chattels and choses in action may be sequestered, and the debtors of the defendant if parties to the suit, or, if not, by ancillary proceedings making them parties, may be compelled to pay the money they owe to the defendant into court. *Grew* v. *Breed*, 12 Met. 363. A sufficient reason why no writ of sequestration, as distinct from process of execution, ought to issue in this case against Randall, is that he has never been in contempt, because the court can make no order or decree which he is personally bound to perform. A writ of sequestration ought only to issue after the defendant has been served with such process as makes him subject to the jurisdiction of the court, according to the law of the tribunal. A writ of sequestration may, perhaps, issue against a defendant who is without the jurisdiction, but resident within it, and who has absconded to avoid service of process; but there is no satisfactory authority for issuing such a writ against a defendant who has never been subject to the jurisdiction, in order to compel him to appear in a suit brought for the collection of a debt. If this draft can be seized, it must be by some process whereby it, or the

proceeds of it, or the debt of which it is evidence, can be taken and held, and ultimately applied to the payment of the debt due to the plaintiff, and not by any sequestration of it, if it cannot be so taken and applied, in order to compel Randall personally to appear in the suit and pay the debt established by the decree.

It is argued that this draft is a chattel found within the Commonwealth, and therefore may be taken and applied to the payment of the plaintiff's debt. It may be assumed, without consideration, that there is nothing in the Fourteenth Amendment of the Constitution of the United States which prevents this from being done. The question is, whether such a proceeding is authorized by our laws.

For certain purposes, bills and notes are regarded in this Commonwealth as chattels. They may be the subject of conversion. *King* v. *Ham,* 6 Allen, 298. They were not the subject of larceny at common law, but have been made so by statute, in connection with books of account and written contracts, receipts, releases, etc. Pub. Sts. c. 203, § 20. They are goods, wares, and merchandise, within the meaning of the statute of frauds; *Baldwin* v. *Williams,* 3 Met. 365; and they may be the subject of a gift, either *inter vivos* or *causa mortis,* and so may savings bank books, and some other evidences of debt. *Grover* v. *Grover,* 24 Pick. 261. *Sessions* v. *Moseley,* 4 Cush. 87. *Bates* v. *Kempton,* 7 Gray, 382. *Chase* v. *Redding,* 13 Gray, 418. *Hunt* v. *Hunt,* 119 Mass. 474. *Sheedy* v. *Roach,* 124 Mass. 472. *Pierce* v. *Boston Five Cents Savings Bank,* 129 Mass. 425. *Taft* v. *Bowker,* 132 Mass. 277. They were not liable to be taken on execution at common law, and they have not been made liable by statute. *Maine Ins. Co.* v. *Weeks,* 7 Mass. 438. *Perry* v. *Coates,* 9 Mass. 537. The Pub. Sts. c. 171, § 33, provide that " bank-notes and all other bills or evidences of debt, issued by a moneyed corporation and circulated as money, may be taken on execution and paid to the creditor at their par value as money collected, if he will accept them; otherwise they shall be sold like other chattels." But bills of exchange and promissory notes which do not circulate as money are not included in the statute.

In England, by statute, an execution may be levied upon bills of exchange, promissory notes, bonds, and other securities for money, and the sheriff or other officer is authorized to sue for

and recover the sums secured.   1 & 2 Vict. c. 110, § 12.   Promissory notes of third persons are not goods, effects, and credits, within the meaning of our statutes relating to trustee process. The maker of the note may be summoned as the trustee of the holder, if the note is not payable on time or is overdue. *Lupton* v. *Cutter*, 8 Pick. 298.   *Lane* v. *Felt*, 7 Gray, 491.   *Hancock* v. *Colyer*, 99 Mass. 187.   Promissory notes were admissible in evidence under the money counts in the old forms of pleading, and an action at law can be maintained against the maker of a promissory note which has been lost or destroyed, when a bond of indemnity will afford complete protection to the defendant; and when it will not, a suit in equity can be maintained.   The loss or destruction of the note is not an extinguishment of the debt of which it is evidence.   *Fales* v. *Russell*, 16 Pick. 315.   *Almy* v. *Reed*, 10 Cush. 421.   *Tower* v. *Appleton Bank*, 3 Allen, 387. *Tuttle* v. *Standish*, 4 Allen, 481.   *Savannah Bank* v. *Haskins*, 101 Mass. 370.   *McGregory* v. *McGregory*, 107 Mass. 543.   *Tucker* v. *Tucker*, 119 Mass. 79.   *Hinckley* v. *Union Pacific Railroad*, 129 Mass. 52.

For the purpose, therefore, of reaching and applying the promissory note of a third person to the payment of a debt due to the plaintiff from the owner of the note, the note in this Commonwealth is not regarded as a chattel, but as the evidence of a debt, although, by reason of the law merchant, it is evidence of a peculiar character.   There are only two methods in this Commonwealth whereby a note has been so applied: one is, by making the persons liable on the note parties to the suit, and compelling them to pay what they owe into court, or to the plaintiff in the suit; and the other is, by compelling the owner of the note to assign it, that it may be delivered to the plaintiff, or may be sold or collected, and the proceeds paid into court or to the plaintiff.   It is because there is no remedy at law that the plaintiff brings this suit in equity, and as his debt has not been reduced to a judgment, his bill is not within the general equity jurisdiction, and he must rely upon the statutes.   St. 1851, c. 206. St. 1858, c. 34.   Gen. Sts. c. 113, § 2.   Pub. Sts. c. 151, § 2, cl. 11.   St. 1884, c. 285, § 1.   In all the cases reported under these statutes in which a promissory note has been reached and applied in equity, either the persons liable on the note have

been made parties defendant and brought by process within the jurisdiction of the court and compelled to pay the amount due into court or to the plaintiff, or the principal defendant, owner of the note, has been made a party, and brought within the jurisdiction of the court, and compelled to deliver up the note, and in effect to assign it, or all these persons have been brought before the court.

The first case reported is *Silloway* v. *Columbia Ins. Co.* 8 Gray, 199. The principal defendant was a foreign insurance company, doing business in this Commonwealth under the statutes, and the other defendant, Edwards, was its general agent in this Commonwealth, appointed in pursuance of the statutes. Both defendants were served with process, appeared, and answered, and the company in its answer set up certain objections to the bill by way of demurrer. The case was heard by the full court on the bill and answer. The plaintiff was a creditor of the company on policies of insurance which it had issued in this Commonwealth, under which losses had occurred, and he had brought an action at law here, but was unable to find property which could be attached, and the bill alleged that Edwards had in his hands property of the company, " consisting of promissory notes given to the company in payment of premiums on policies of insurance issued by " the company " in this Commonwealth." In this case the court had full jurisdiction over both defendants for the purpose of collecting a debt due from the principal defendant; and although the company was a foreign corporation, it had, under the statutes, appointed a citizen of the Commonwealth " a general agent upon which all lawful process against the company may be served, with like effect as if the company existed in this State," and the process against the company was served upon this general agent.

The next case is *Sanger* v. *Bancroft*, 12 Gray, 365. The bill was brought to collect a debt due to the plaintiff from Bancroft, who resided in California, and to reach a mortgage of land in this Commonwealth given by Brigham to Bancroft to secure the payment of a promissory note, which mortgage had been assigned without consideration to Tubbs. The note secured by the mortgage had not been assigned. Apparently Bancroft was not served with process, but Brigham and Tubbs were. The

note was not within the Commonwealth, and was held by Bancroft or some person unknown. The bill was dismissed.

The third case is *Davis* v. *Werden*, 13 Gray, 305. It does not appear by the report whether Couch was a party to the suit, but the papers on file show that he was served with a subpœna within the Commonwealth. It was a bill brought by a creditor of Couch and Werden, formerly copartners in this Commonwealth, where the plaintiff and Couch continued to reside, to attach certain promissory notes given by Couch to Werden, and put by Werden into the hands of Royce in this Commonwealth for collection. Werden, at the date of the bill, resided in Illinois. There was a decree for the plaintiff, but the form of it does not appear. Royce as well as Couch, the maker of the notes, was within the jurisdiction of the court, and was served with process within the Commonwealth.

In *Moody* v. *Gay*, 15 Gray, 457, the principal defendants, Gay and Pitkin, debtors of the plaintiffs, were inhabitants of this Commonwealth and parties to the suit, and the property reached was a mortgage to Pitkin of real estate in this Commonwealth. In *Barry* v. *Abbot*, 100 Mass. 396, the original papers show that Abbot, Blood, and Chamberlain were all residents within the Commonwealth, and duly served with process, and appeared and answered. In *Tucker* v. *McDonald*, 105 Mass. 423, all the parties to the chose in action were before the court. In *Anthracite Ins. Co.* v. *Sears*, 109 Mass. 383, Sears, the owner of the policy of insurance, was a party served with process, and subject to the jurisdiction of the court. *Phœnix Ins. Co.* v. *Abbott*, 127 Mass. 558, decides that proceedings under the Gen. Sts. c. 113, § 2, now the Pub. Sts. c. 151, § 2, cl. 11, are in the nature of an equitable trustee process, and that some other person than the plaintiff's debtor must be made a defendant, and that a bill cannot be maintained for the purpose of compelling a defendant by injunction to hold in his own possession his property, until a decree be obtained against him, in order that the property may be taken and applied to the payment of the debt established by the decree. Some of the earlier cases, in which there was no equitable trustee before the court, are criticised and explained in the opinion.

The plaintiff relies especially upon the St. of 1884, c. 285, § 1, passed since the decision in *Phœnix Ins. Co.* v. *Abbott*.

That statute was apparently passed to change the law as declared by the following decisions of this court. *Chapman* v. *Banker & Tradesman Publishing Co.* 128 Mass. 478. *Phœnix Ins. Co.* v. *Abbott, ubi supra. Carver* v. *Peck*, 131 Mass. 291. *Russell* v. *Milton*, 133 Mass. 180, 181. The only provisions of this statute which concern this case are those which relate to property which is in the hands, possession, or control of the debtor, independently of any other person, or is not within the State. These provisions do not indicate any intention to extend the jurisdiction given by the Pub. Sts. c. 151, § 2, cl. 11, beyond the general jurisdiction of courts of equity to subject property which cannot be taken on execution to the payment of a judgment obtained at law. The nature of this general jurisdiction in equity is stated in *Carver* v. *Peck, ubi supra,* as follows: " As the process of a court of chancery operates *in personam,* it is within the power of such a court, having jurisdiction of the person of the defendant, to compel or restrain a conveyance of his interest in personal property, or even in real estate, although the property or estate is itself outside the territory to which the jurisdiction of the court is limited." I have found no case decided by any court in which, under this general jurisdiction, choses in action have been taken and applied in payment of a judgment, where none of the parties to the choses in action was amenable to the jurisdiction of the court, and the statutes did not authorize the choses in action to be levied upon and sold.

*Ager* v. *Murray*, 105 U. S. 126, was a suit on a judgment at law, and shows the procedure when, under this general jurisdiction, letters patent, or other intangible property, are taken and applied to the payment of a judgment.

The authority to appoint a trustee to execute an assignment for the defendant, instead of compelling him to execute one, is derived from statute. Our statutes permit a bill in equity to be inserted in a writ, and attachments of property to be made as in actions at law, and also permit writs of seizure or of execution in common form to issue when such process appears to be an appropriate method of enforcing a decree in equity. Pub. Sts. c. 151, § 29. The Pub. Sts. c. 141, § 22, authorize the court to appoint some suitable person in the place of a trustee of real or personal estate, under an express or implied trust, to

sell, convey, or transfer the property when the trustee is " under the age of twenty-one years, insane, out of the Commonwealth, or not amenable to the process of any court therein which has equity powers." There are statutes relating to the appointment of a person to act for others in certain cases, and to the appointment of receivers, and the vesting in them of the title to property, but the case at bar is within none of these statutes.

Independently of statute, a court of equity cannot appoint a person to execute a transfer of the property of another in his name. It may compel a debtor of the principal defendant, if it have jurisdiction over him, to pay to the plaintiff the debt he owes to this defendant, but it does this only when it has jurisdiction over the person of that debtor; and it may compel an assignment of choses in action, but it does this only when it has jurisdiction over the owner of the choses in action. Courts of law can transfer the title to property. In real actions, they declare the title and transfer the possession; in personal actions, by virtue of a levy of execution they transfer both title and possession; but decrees of courts of equity, except where statutes have made other provisions, operate only *in personam.* " This power of creating and extinguishing titles the chancellor never had nor claimed to have, except when it was given him by statute. It is true that he frequently directed the sale of property, but it was by his control over the person of the owner that he made the sale effective, i. e., when the sale had been made he compelled the owner to execute a deed pursuant to the sale; and hence, when the owner was out of the jurisdiction, or labored under any incapacity, e. g., that of infancy, the chancellor was powerless." Langdell Eq. Pl. (2d ed.) § 43, note 4. 3 Pom. Eq. Jur. § 1317. *Hart* v. *Sansom*, 110 U. S. 151. It is for want of this power, independently of statute, that the bill was dismissed in *Spurr* v. *Scoville, ubi supra.* It was under the statute passed to supply this want of power that *Felch* v. *Hooper*, 119 Mass. 52, was decided.

In *Shaw* v. *Wright*, 3 Ves. Jr. 22, Lord Chancellor Loughborough said, " You will not find any instance of an order to sell under a sequestration a subject, which passes by title and not by delivery," and the St. of 36 Geo. III. c. 90, was passed. The power of a court of equity to appoint or direct its clerk or

a master to make conveyance of property rests, where it exists, upon statute. If any power is now exercised by courts of equity independently of statute to vest the title to property in receivers, except by conveyance from the owner, it is exercised only when the court has acquired full jurisdiction over the person of the owner.

This case is not one in which the plaintiff claims title to the draft, and where a decree can be made declaring his title. He contends that the draft is the property of Randall, and that the title should be transferred to him, or to some person for him, so that it, or its proceeds, may be applied to the payment of the debt which Randall owes him. The draft cannot be taken on execution. The United States. cannot be compelled to pay the debt into court or to the plaintiff; the court is not authorized by any statute to appoint any person to assign or convey Randall's property in the draft, either by indorsing it or by delivering it to any person, and it has no jurisdiction over Randall to compel him to do these things. To compel the delivery of the draft to the plaintiff, without transferring the title to him, would be an abuse of process, and would give the plaintiff no right to collect the draft.

Whether it were wise to·subject such a chose in action as this is to judicial sale, when none of the parties to it is within the jurisdiction of the court, is, if there be no constitutional objection, a question for the Legislature. It is to be noticed that the statutes do not permit a person to be summoned as trustee in trustee process " who is not a resident of the Commonwealth," or a corporation " which is not established under its laws, . . . unless he or it has a usual place of business in the Commonwealth." Pub. Sts. c. 183, § 1. If the statutes relating to equity jurisdiction which are relied on were intended to give to a creditor whose debt has not been reduced to a judgment means of collecting it which are analogous to those which are afforded by an arrest of the debtor, they would not authorize these proceedings against a non-resident debtor who had never been served with process within the Commonwealth, and had never appeared in the suit. I think that the existing statutes confer no jurisdiction over this draft to apply it to the payment of the debt due to the plaintiff, and that the bill should be dismissed.