## MILLER et al. v. SHELBY COUNTY INV. CO.
### No. 1986.

Court of Civil Appeals of Texas. Beaumont.
July 8, 1930.

Anderson & Lewis, of Center, for appellant.

Sanders & McLeroy, of Center, for appellee.

## O'QUINN, J.

Appellee, Shelby County Investment Company, a corporation, brought this suit in the district court of Shelby county, Tex., against Amee Miller, T. B. Holt, and Ewing Holt, alleging that T. B. Holt and Ewing Holt constituted a partnership known as Holt Brothers. For cause of action appellee alleged that September 1, 1927, Amee Miller executed and delivered to Holt Brothers her certain promissory note payable to their order for the sum of $660, due and payable in twelve equal monthly installments of $55 each, the first of said installments due and payable on October 1, 1927, said note providing that failure to pay any installment at maturity should mature the whole of said note; that one of said installments became due and payable on January 1, 1928, and was not paid, thereby maturing the whole of said note; that said note provided for interest from maturity at the rate of 10 per cent. per annum until paid, and also provided for a 15 per cent. additional on the principal and interest due on said note as attorney's fees if placed in the hands of an attorney for collection; that at the time of the execution of said note said Amee Miller, for the purpose of securing the payment of same, executed and delivered to said Holt Brothers a mortgage lien on one certain automobile of the value of $525, which mortgage was a valid, subsisting, and unsatisfied lien on said property; that before the maturity of said note and lien, said Holt Brothers, "for a valuable consideration, sold, transferred, and assigned said note, together with said lien, to this plaintiff, guaranteeing the payment of said note in every way"; that three installments amounting to $155 had been paid on said note; that due demand had been made for the payment of the balance due on said note, but that defendants had failed and refused to pay same or any part thereof; that it became and was necessary to place said note in the hands of an attorney for collection; and prayed for judgment for its debt, interest, and attorney's fees, and for foreclosure of its mortgage lien.

Defendant Amee Miller failed to appear and answer. The defendants T. B. and Ewing Holt answered that at the time of the transactions alleged by appellee, T. B. Holt was not a member of the firm of Holt Brothers, but that Ewing Holt alone was doing business under the name of Holt Brothers. The truth

of this answer was conceded and T. B. Holt was dismissed from the suit. Appellant Ewing Holt answered by general demurrer, and special exception to the effect that he was sued as an indorser of the note, and that appellee's petition did not allege that notice of dishonor (nonpayment) was given him in the time and manner prescribed by law, general denial, and a special denial that he ever indorsed the note or guaranteed its payment. In the alternative, he answered that if he be held to have indorsed the note, then that he had been discharged from payment for in that appellee never at any time gave him any notice of nonpayment by the maker, within the time and manner required by law, and other defenses not deemed necessary to mention.

At the close of appellee's evidence, appellant Holt moved the court to render judgment in his favor. This motion was based on the ground that if he was liable his liability was that of an indorser only, and that as he had not been given the required notice of dishonor he was discharged. The record does not disclose any action of the court on this motion, but the statement of facts shows that appellant Holt offered his defensive evidence, which indicates that the motion for judgment was denied.

The case was tried to the court without a jury, and judgment rendered for appellee against defendants Amee Miller and Ewing Holt for $495 principal, $88.64 interest, and $49.50 attorney's fees, aggregating $633.14, and for foreclosure of the mortgage lien on the automobile. The judgment further decreed that defendant Ewing Holt have and recover of and from defendant Amee Miller any and all sums he was required to pay by reason of the judgment. Appellant Holt filed motion for a new trial, which was overruled, and he brings this appeal.

At the request of appellant Ewing Holt, the court made and filed his findings of fact and conclusions of law. They are:

### "Findings of Fact

"I find that on the 1st day of September, 1927, the defendant Amee Miller, made, executed and delivered to Holt Brothers or order, her certain promissory note in writing for $660.00, due and payable in twelve equal, consecutive, monthly payments of $55.00 each, the first installment due and payable on the 1st day of October, 1927, at Center, Texas, with a provision in said notes that the failure to pay any installment at the maturity thereof, should, at the option of the holder, mature the whole of said indebtedness; that the first three installments for $55.00 each were paid at their respective maturities, but that the January 1st, 1928, installment for $55.00 was not paid and no other installment has been paid since that time, and the whole

of the same has matured; that said note provides for interest from maturity at the rate of ten per cent per annum and fifteen per cent additional on the principal and interest as attorney's fees if placed in the hands of an attorney for collection.

"I further find that at the time of the execution of the said note, the said Amee Miller made, executed, and delivered to Holt Brothers, for the purpose of securing said note, a mortgage lien on the property as described in plaintiff's petition. That Ewing Holt, one of the defendants herein, on the 1st day of September, 1927, was doing business in Center, in Shelby County, Texas, under the firm name of Holt Brothers, in the sale of automobiles, and especially engaged in the sale of Willys-Knight automobiles.

"That the note sued on herein was lost and was not introduced in evidence, but some of the testimony showed that the payee in said note was C. I. T. Corporation of Dallas, Texas, but the said note was in fact executed and delivered to the defendant, Ewing Holt, and had been his property at all times until he transferred, assigned and delivered the same to the plaintiffs in this cause, the mortgage executed to Holt Brothers at the time of the execution of said note for the purpose of securing the same was executed to Holt Brothers. Probably the payee in said note was the C. I. T. Corporation for blank forms of notes with C. I. T. Corporation as payee were being used by Holt Brothers in their business, but taking the note and mortgage together, I find that the note and mortgage were executed to Holt Brothers.

"I find further that on or about the 1st day of January, 1928, Ewing Holt, for a valuable consideration, sold said note and mortgage aforesaid to the Shelby County Investment Company, and agreed to endorse the same and for all intents and purposes did endorse the same and guaranteed its payment. It was understood at the time of the transfer that Ewing Holt, doing business as Holt Brothers, would endorse the same, and he did in fact guarantee the payment of same, but by oversight he failed to write his name on the back of the note. I find further that the plaintiff, Shelby County Investment Company, would not have accepted said note and mortgage if Ewing Holt had not guaranteed the payment of said note.

"I find further that the Shelby County Investment Company, after the maturity of said note, notified Ewing Holt of its maturity as well as Amee Miller, and tried to get the same settled, but not getting the same paid it was forced to place said note in the hands of its attorney for suit; and suit was filed thereon, plaintiff agreeing to pay said attorney's fees, as stipulated in said note, which are reasonable and customary

**"Conclusions of Law**

"Though the transfer and guarantee of said note by Ewing Holt was oral, under the law he is secondarily liable to the plaintiff herein after the proceeds of the sale of the above car are applied on the judgment rendered in this cause, as is shown by the transcript herein. It is further ordered that judgment be rendered for the plaintiff, as prayed for in the petition."

■ The first assignment of error says that the court erred in overruling his general demurrer to appellee's petition. There is nothing in the record to show that the demurrer was called to the court's attention, or that he acted on same. Appellant presents this question by bill of exception only. Rulings of the court on questions of pleadings cannot be brought up for review in this way. The record must show the action of the court. Rules 53 and 65 for District Courts, 3 Tex. Jur. § 404; Williams v. Trinity Gravel Co. (Tex. Civ. App.) 297 S. W. 878; Epting v. Nees (Tex. Civ. App.) 25 S.W.(2d) 717; Hall v. Williams & Ellis (Tex. Civ. App.) 267 S. W. 520.

■ The second assignment asserts error in the court's failure to sustain his special exception to appellee's petition. This exception challenged the sufficiency of the petition because of its failure to allege that notice of dishonor had been given appellant as required by law. The record does not disclose that this exception was presented to or acted on by the court. It is shown by a bill of exception, but it cannot be brought up in this way. The record must affirmatively show the action of the court. 3 Tex. Jur. § 404. See authorities supra.

The assignment complaining that the court erred in his findings of fact in finding that the note sued on was payable to Holt Brothers is overruled. It is contended that there was no evidence to support this finding. There is direct evidence that the note was so payable.

■ The court's finding that when appellant sold and transferred the note to appellee, he guaranteed its payment, is assigned as error because without evidence to support it. We sustain this assignment. Appellee pleaded that appellant guaranteed the payment of the note, and attempted to so testify, but he explained his testimony by saying that appellant promised to indorse the note, and that that was what he meant by saying appellant guaranteed its payment. If in fact appellant did tell appellee he would guarantee the payment of the note, then he was liable as a guarantor; but the proof must so show. There is a decided difference between indorsing a note and guaranteeing the payment of same. They constitute two wholly different grounds of liability. But appellant says that even if he did orally guarantee the payment of the note, the promise was not in writing, and therefore against the Statute of Frauds (Rev. St. 1925, art. 3995, subd. 2) and not enforceable. This contention is not sound. Where transfer of a note by delivery is for a valuable consideration, the transferor may orally guarantee its payment and the promise to pay will not be within the Statute of Frauds. The guaranty of payment in law is regarded as the promise of the guarantor or transferor to pay for the consideration had to him from the transferee, if the maker of the note does not pay, and not a promise to answer for the default of another. In other words, if an oral guaranty is made of the payment of a note, transferred for a valuable consideration by delivery only, the promise is not within the Statute of Frauds. 2 Daniel on Negotiable Instruments (5th Ed.) § 1763; Tiedeman on Commercial Paper, § 418; 3 R. C. L. p. 1160, § 378; First State Bank v. McElwrath (Tex. Civ. App.) 266 S. W. 837; Daniel on Negotiable Instruments (6th Ed.) § 1761.

■ The fourth assignment complains that the court erred in rendering judgment against appellant because if he was liable he was so only as an indorser, and there was neither pleadings nor proof that he was given notice of nonpayment, as required by law. This assignment will have to be sustained. The only allegation in appellee's petition as to its acquisition of the note, or as to appellant's liability thereon, is: "Plaintiff, charging further, says that before the maturity of the aforesaid note and mortgage lien, the defendants, T. B. Holt and Ewing Holt, acting as Holt Brothers, for a valuable consideration, sold, transferred and assigned said note, together with said lien, to this plaintiff, guaranteeing the payment of said note 'in every way." It is not believed that the allegation above quoted shows any liability of appellant as an indorser of the note, but if it could be so held, it does not allege that appellant was given notice of nonpayment or dishonor, which should be alleged.

■ But appellee says that appellant waived notice for in that there was in the note a stipulation that "The makers, endorsers and guarantors hereby waive notice of nonpayment, protest, presentment and demand," etc. Plaintiff's petition did not set out the note sued on literally, but merely made general allegations as to its contents, and there was no allegation as to waiver of notice. When the case was tried, the note had been lost and was not in evidence. The proof merely followed the general allegations. After the trial and judgment, and an appeal had been perfected and the record filed in this court, appellee applied for a writ of certiorari to perfect the record by bringing up the note, alleging that it had been found and should be

included in the record. We granted the writ and the clerk of the trial court obeyed by sending up a certified copy of the note. The writ of certiorari was improvidently granted. The note was not introduced in evidence and, therefore, could not form any part of the record. It cannot be considered by us, and so there is no evidence to show waiver of notice. If the note had been in evidence, the waiver clause in same would have been effective, and the giving of notice waived.

■■ It is contended that the judgment cannot stand for in that no guaranty of the note being shown, the judgment must stand, if at all, on appellant's liability as an indorser, and that the evidence without dispute shows that appellant never indorsed said note, but that at the most he only promised to do so. The note was sold for a valuable consideration to appellee and delivered without actual endorsement. It is contended by appellee, and the court found, that appellant agreed to indorse the note but failed to do so. The court further found that to all intents and purposes appellant indorsed the note. An agreement to transfer the note is prima facie an agreement to transfer it in the usual way by endorsement. 8 C. J. p. 356, § 534(6); Andrews v. Whitehead (Tex. Civ. App.) 60 S. W. 800; Neal v. Andrews (Tex. Civ. App.) 60 S. W. 459; Clopton v. Abee (Tex. Civ. App.) 158 S. W. 180. It is well settled that if a transferor delivers the instrument without indorsing it, where the transfer was upon a good consideration, and it was agreed or understood that it would be indorsed by him, and he refuses later to indorse the note, in equity he may be compelled to indorse same. Section 49 of the Negotiable Instrument Law, which is the law of Texas, article 5934 (section 49), provides that "where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor."

■ Our attention has been called to the case of Prewitt v. Lloyd (Tex. Civ. App.) 240 S. W. 1039, which holds that, "A payee who sold a note to plaintiff and delivered it to him without indorsing it was not liable on the note as indorser." It is contended that this is controlling in the instant case. In that case, as in the one at bar, the note was transferred by delivery only. In that case,

as in this, it was contended by the plaintiff that the transferor of the note promised to indorse it, and the defendant denied making such promise. Whether there was a promise to indorse the note was a question of fact and the cited case was submitted to a jury on that issue alone. The jury found against the promise to indorse. So that case was decided in accordance with the facts so found. If the jury had found that the promise to indorse was made, the judgment would have been as in the instant case under the law. Of course, where a note is transferred for value, and at the time it is understood that the transferor is not to indorse the note, or if he does indorse same, the indorsement is only for the purpose of conveying title and not liability, then the transferor cannot be held as an indorser, for in that event it is in effect a transfer without recourse. In the cited case Judge Fly stated that the Negotiable Instrument Law went into effect after the consummation of the trade transferring the note was made and, therefore, had no bearing upon the issue. But he intimated that a transfer by mere delivery of a note by the payee would not imply the right of the transferee to have him indorse same. In the absence of an agreement as to whether the transferor was to indorse, and the transfer was for a valuable consideration, we take it the law grants to the transferee not only the title of the transferor to the note but the right to have his indorsement on the note, and if this is refused, then equity will compel his indorsement. Article 5934, Rev. St. 1925 (section 49); Simpson v. Bank, 94 Or. 147, 185 P. 913; Cady v. Bay City Land Co., 102 Or. 5, 201 P. 179, 21 A. L. R. 1367; Lawrence v. Citizens' State Bank, 113 Kan. 724, 216 P. 262; McCann v. Randall, 147 Mass. 81, 17 N. E. 75, 9 Am. St. Rep. 666; Daniel on Negotiable Instruments (6th Ed.) § 744. The question whether appellant agreed at the time the note was sold and transferred to appellee to indorse the note is one of fact. The court found that he made such promise or agreement. If upon another trial the pleadings allege, and it is found, that appellant did so agree, then appellant is entitled to a judgment accordingly holding appellant as an indorser.

From what has been said it follows that the judgment as to defendant Amee Miller must be affirmed, and that as to appellant Ewing Holt it be reversed, and it is so ordered.

Affirmed in part, and reversed and remanded in part.