### CORBELL v. STENGEL.

#### No. 9559.

Court of Civil Appeals of Texas. San Antonio.

June 5, 1935.

Lee Upton, of San Angelo, and Frank Hartgraves, of Menard, for appellant.

Stevenson, Baker & Knetsch, of Junction, for appellee.

SMITH, Justice.

This action was brought by C. W. Corbell against George Stengel for damages for an alleged fraud perpetrated upon the former by the latter. In response to a directed jury verdict, judgment was rendered denying recovery to Corbell, who has appealed. The parties will be designated as plaintiff and defendant, respectively, as in the court below.

In brief, plaintiff alleged that defendant was cashier of a Menard bank, with which plaintiff transacted all his business; that he kept his notes and other business papers in the bank and transacted his banking and other business affairs through defendant, who attended to the collection of notes held by him and interest thereon and otherwise looked after his business interests, advising and consulting with him; that defendant by false and fraudulent representations induced plaintiff to purchase a promissory note of one Jopling, who was in fact irresponsible and insolvent and for that reason could not and did not pay the note; and that plaintiff was damaged in the amount of the note.

All of plaintiff's ten assignments of error are directed at the action of the court in instructing a verdict in the face of issues of fact, which plaintiff asserts were raised by the evidence and should have been submitted to the jury.

■ In passing upon the action of a trial court in directing a verdict, a reviewing court must accept as true all evidence which, when liberally construed in favor of the complaining party, tends to support that party's cause; and all of the evidence of the adverse party will be disregarded when in conflict with the evidence of the complaining party. With that rule in mind, we will state the case made by the record at large.

At the inception of the transactions here involved, plaintiff was a successful ranchman residing in Menard county. He was 67 years old, was a man of considerable affairs, and of much business experience, with idle money then on hand which he desired to invest.

Defendant was cashier of a Menard bank, with which plaintiff had transacted all his banking business for the previous seven years. During that period plaintiff had kept his business papers, securities, and the like in a box in defendant's bank, and often exercised his free access to them. And also, during that period, defendant, following a familiar custom in country banks, looked after plaintiff's notes and collections, and apparently advised with plaintiff, as a customer of the bank, about such matters, when consulted by him. The parties were friends, at least in a business way, and each had confidence in the other.

■ In 1923 or 1924, defendant entered into a partnership with A. L. Jopling and J. D. Smith in the general mercantile business in the town of Menard, in which defendant and Smith each took a one-fourth interest and Jopling the remaining one-half interest. The partnership prospered, but in 1926 Jopling purchased defendant's and Smith's interests, giving the latter two $2,500 notes, and defendant a $4,000 note and a store credit of $1,000. The notes were payable in January, 1928. Jopling's

note to defendant was renewed at maturity until January 1, 1929, on which date he paid the accrued interest.

Now, on January 23, 1929, plaintiff, having some idle money on hand for investment, called on defendant at the bank and (quoting plaintiff's testimony) asked him if he knew "about any vendor's lien notes that I could buy and he said no, he didn't, but that he had an A-1 note which he considered as good as a vendor's lien note, on A. L. Jopling, that he would love to sell—that it was just as good as a vendor's lien note"; that Jopling had a good business; that his business was all right and that he had "something like $25,000 worth of goods and that the note was well secured" and "would be paid; that there was no doubt about it"; that "he had been in partners with Jopling and that he had sold his part out and that was how come him with the note"; that Jopling "done business through the bank"; that he "kept up with Jopling's business" and "knew all about it" and "kept up with the run of" it; that defendant said Jopling owed "very little, if anything," not more than $1,000, besides the $4,000 covered by the note then and there offered plaintiff; that he "would take care of the note" for plaintiff "just like it was his own business"; that he had Jopling's note for $4,000, due in 1929 or 1930, and "had a lien on that stuff" (there is nothing in the record tending to show what was meant by this reference to a lien). When defendant made these statements, plaintiff went out and consulted his daughter about the proposition (all the parties were residents of the same town and neighbors) and the two agreed that, upon defendant's representations, it would be a good investment, whereupon, after being absent ten or fifteen minutes, plaintiff returned to the bank and told defendant he would "take the note." We must accept as true, for the purposes of this inquiry, that plaintiff then "signed a blank check," handed it to defendant, and "told him to fix that business up and to put the papers with my other papers" there in the bank—"told him to make the transfer of those papers and to fix the business up and put the papers with my other papers." Plaintiff further testified that he made no further inquiry about the note he was to purchase, about when it was due, or the rate of interest it bore, or whether it was, or would be, indorsed. The existing note was, in fact, the renewal of the original note made by Jopling to defendant in 1926,

with interest paid up to January 1, 1929, and was therefore past due. The record shows that defendant had Jopling make a new note for the proper amount directly to plaintiff, dated January 1, 1929, to mature in two years, and bearing interest at the rate of 8 per cent. from date; that plaintiff's check for that amount was made payable to Jopling, the maker of the note, with the notation "for loan" thereon, was indorsed by Jopling over to defendant, and the latter collected it through the bank. A few days later, on February 1, the check was sent plaintiff along with the bank's usual monthly statement and other canceled checks. It was thereupon inspected by plaintiff and his daughter, and, while they commented upon the fact that it was made payable to Jopling (they thought it should have been made payable to defendant), they did not mention the fact, or the suspicions they said it aroused in them, to defendant, whom they frequently thereafter contacted as usual. In January, 1930, when the first year's interest accrued on the note and it was not promptly paid, plaintiff mentioned the fact to defendant, who, expressing surprise at the delinquency, went, with plaintiff's consent, next door into Jopling's store, collected the interest from the latter, and placed it to plaintiff's credit in the bank. By 1931, if not in 1930, Jopling began to encounter financial difficulties, which eventuated in bankruptcy in 1932. By this process, plaintiff lost his $4,000, and brought this action against defendant, charging him as the author of the loss.

As evidence of the asserted falsity of defendant's representations, plaintiff points out that at the time of this transaction Jopling in fact owed a note at the bank for $2,500, upon which defendant was indorser, which indebtedness defendant had failed to disclose to plaintiff when undertaking to state the amount of Jopling's debts, and, further, that Smith, as indorser of one of the $2,500 notes given him by Jopling in the dissolution of their partnership, had been obliged to pay a balance of $1,000 on said note, for which Jopling had never reimbursed him; that defendant, knowing these facts, fraudulently concealed them from plaintiff; that all of Jopling's business estate, as a bankrupt, was finally sold for approximately $2,000.

Plaintiff contends that the foregoing facts show material representations, and that those representations were false, whereby he was deceived into parting with

his money. We have reached the conclusion, from a careful consideration of the whole record, that the evidence was sufficient to take those issues to the jury, and that the trial court erred in directing a verdict against plaintiff in the face of that evidence.

■ It is true that defendant vigorously denied some of this testimony and explained the transaction so plausibly that a jury might have readily accepted his testimony and found for him thereon. But it was the province of the jury, and not the judge, to pass upon the weight and sufficiency of that testimony and adopt or disregard it in part or in toto, as their skepticism or beliefs impelled them. It is true also that much of plaintiff's testimony was more or less vague and indefinite and might easily have been disbelieved and disregarded, in whole or in substantial part, by the jury, but nevertheless plaintiff was entitled to a submission of that testimony to the jury.

■ It should be said further, in view of another trial, that, if the jury find that defendant agreed to sell and transfer, to plaintiff, Jopling's outstanding note to defendant, such agreement carried with it the obligation upon the part of defendant to indorse the note, with recourse, so as to obligate him to pay it in the event of Jopling's default. Section 49, art. 5934, R. S. 1925; Osburn v. Smart (Tex. Civ. App.) 58 S.W.(2d) 1073; Miller v. Shelby County Inv. Co. (Tex. Civ. App.) 30 S. W.(2d) 668.

We sustain plaintiff's propositions 1, 4, 5, 6, 7, 8, 9, and 10, in so far as complaint is made therein of the failure of the court to submit the issues therein pointed out, and hold that those issues should be submitted upon another trial, if the evidence again raises them and proper request is made therefor. The issues raised in plaintiff's second and third propositions are perhaps immaterial, as being substantially embraced in the other issues mentioned, and for that reason those propositions need not be decided here.

■ Defendant urges that the trial court properly directed a verdict, upon the ground that the record shows the cause of action was barred by the two-year statute of limitations. We overrule this contention upon the one ground, if no other, that defendant did not plead limitation upon the merits, but only by demurrer, which,

if ruled upon, is not made the subject of cross-assignment here. It should be added that limitation does not begin to run against causes of action based upon fraud until the fraud complained of has been discovered by the injured party or could have been discovered by him in the exercise of due diligence. These also are questions of .fact, to be determined by the jury.

Because the court erred in taking the case from the jury and directing a verdict, the judgment will be reversed, and the cause remanded.