## MOORE v. McKAGUE.

No. 4550.

Court of Civil Appeals of Texas. Amarillo. Feb. 17, 1936.

Rehearing Denied March 30, 1936.

John D. H. Tester and Collins, Jackson & Snodgrass, all of San Angelo, for appellant.

C. H. Tupper, Jr., W. H. Lipscomb, O'Neal Dendy, and Wm. W. Tupper, all of San Angelo, for appellee.

MARTIN, Justice.

Prior to March 12, 1934, appellee, McKague, had in escrow option contracts on oil and gas leases in Reagan and Glasscock counties. He desired to sell these. On said last date he made a written contract with appellant, Moore, to perform this service, which contract provided in substance:

That appellee should acquire three sections known as the Roby land by leases for a price not to exceed $1 per acre and "annual delay rental" of not less than 50 cents per acre; that in consideration of a transfer of a one-half interest in all leases other than the Roby lease to appellant, the latter would sell said leases out upon conditions not necessary to here recite, and pay to appellee out of the proceeds of such sale a total of $5,239.95. Subsequent to March 12, 1934, an alleged oral agreement was entered into between the parties, changing some of the aforesaid terms of said written contract. Respecting this appellee alleged:

"Defendant proposed to plaintiff that plaintiff and defendant handle the leases in a manner different from that provided for in said original contract, and in the manner hereinafter alleged, and in effect, that if the latter would allow him (defendant) to take title to all such leases in his name, and handle and sell the same if he saw fit, he, the said defendant, would pay to plaintiff such total indebtedness of $5239.95, and on such indebtedness would pay to plaintiff 25¢ per acre, as plaintiff obtained abstracts of title covering said block of 6986.66 acres, and had the same approved; that plaintiff accepted such latter offer, and procured such abstracts of title and had the same approved; and that, later, (the time when defendant should have and would pay to plaintiff the remainder of said $5239.95, being, then, indefinite and uncertain) defendant offered to pay plaintiff the said sum of $5239.95, or the balance which might then be due and owing thereon, when a well for oil and gas, and which was then being drilled by defendant on a larger block of land, which included said 6986.66 acre block, should be completed; which offer was then and there accepted by the plaintiff.

"Plaintiff would further aver that said well, mentioned in the last preceding paragraph, was completed by defendant sometime during the early part of September, 1934, at or about which time defendant received from Stanolind Oil & Gas Company the sum of $35,000.00, for an undivided one-half interest in such block of 6986.66 acres, and other acreage controlled by the defendant.

"Plaintiff represents that he has received from the defendant, on account of such total indebtedness of $5239.95, the sum of $1746.66, leaving a balance now due and owing to the plaintiff in the sum of $3493.29."

The defense pleaded in substance was that no such oral agreement was ever made.

The only issue submitted, with the jury's answer thereto, was the following:

"Do you find from a preponderance of the evidence that the defendant, John I. Moore, agreed with the plaintiff, Bruce C. McKague, at some date subsequent to March 12, 1934, to pay him the sum of $3,493.29 when the well for oil and gas should be completed? Answer Yes or No. Answer Yes."

Judgment was entered against appellant for $3,493.29.

The only assignment here is that the court erred in not directing a verdict for appellant because the evidence not only fails to prove, but actually disproves, the existence of the oral contract pleaded by appellee.

■ In appraising the merits of such an assignment, the rule, repeated in varying language with monotonous regularity by appellate courts, is as follows:

"In passing upon the action of a trial court in directing a verdict, a reviewing court must accept as true all evidence which, when liberally construed in favor of the complaining party, tends to support that party's cause; and all of the evidence of the adverse party will be disregarded when in conflict with the evidence of the complaining party." Corbell v. Stengel (Tex.Civ.App.) 83 S.W.(2d) 1084, 1085. See, also Michaelson v. Green (Tex.Civ. App.) 85 S.W.(2d) 1116; Diamond v. Duncan, 107 Tex. 256, 172 S.W. 1100, 177 S. W. 955; St. Louis Southwestern Ry. Co. of Texas v. McCauley (Tex.Civ.App.) 134 S.W. 798; Knox & Nunn v. Pierce (Tex. Civ.App.) 146 S.W. 703; E. F. Rowson & Co. v. McKinney (Tex.Civ.App.) 157 S.W. 271.

■ The evidence before us appraised under the terms of the above rule is believed by us sufficient to raise the issue submitted. There are some apparent inconsistencies in appellee's testimony, but these presented after all a question to be solved

by the jury. We have here the usual difficulty of ascertaining the real facts in a record replete with bickering of counsel. We think it fairly inferable that appellant desired and secured a change in the written contract by which he got title to all instead of one-half interest in the leases; that he put part of this lease in on a drilling contract for which he was paid the gross sum of $35,000 by the Stanolind Oil & Gas Company; that appellant, in order to better enable him to put this deal over, secured such change and agreed to pay appellee the total consideration called for in the written contract, when such deal was completed; that about the time such drilling contract was completed, said Oil & Gas Company refused to complete payment to appellant unless he settled his differences with appellee; that in order to secure such payment appellant agreed to pay appellee the balance found by the jury to be due and owing. We quote here part of appellee's testimony from which such conclusions are fairly inferable:

"After I paid off the Roby leases, Sections 19, 20, and 30, it was a day or two after that—Mr. Moore, I think, was in Big Spring and he sent word for me to meet him in Garden City the following morning and to pay off the balance of the block under operation, the Wilkerson and the Cox land, and I met him in Garden City, and the next I remember he said: 'Will it be all right for me to take the leases in my name'—I already had them in my name—and I said, 'Yes, it will be all right if I get the balance of my money when the deal is completed', and he said, 'You sure as hell will', and the deal was completed and I haven't gotten my money."

"Q. That was after the deal was over? A. Yes, he said he had it in the sack. * * *

"Q. Going back to the Garden City proposition; when you state he told you you would have to wait until the deal was completed to get your money, what was meant by the word 'deal'? A. By deal completed, it meant that Mr. Moore would either drill the well or would sell it to somebody who would. With the Gulf lease expiring was what put the value to it."

Upon completion of the well, appellee demanded his money of appellant about which demand appellee testified in part:

" 'I will have to sell the other half interest before you get your money', and I immediately went to the Stanolind and they told me they could not pay Mr. Moore the balance of the money until it was straightened up. Mr. Moore came to me and I told him he said he would have to sell the other half interest before he paid me, and he said he was kidding and I released the Stanolind and he got paid off and I didn't get anything."

Appellant testified in part:

"Q. He is now claiming the balance, or the difference between $1700.00 and that amount ($5239.95); do you deny at this time the liability? A. No sir, I admit owing it if, as and when it is due.

"Q. The only thing you deny is that it is not due at this time? A. That is all."

By patching together scraps of evidence, we think the conclusion is fairly deducible that appellee proved the substance of his alleged contract. The trial court heard all this evidence and approved the jury's finding. We are not able to say his action was erroneous.

Judgment affirmed.